## CHARTIERS V. GAS CO. v. ANN LYNCH.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 7, 1887—Decided January 3, 1888.

1. A natural gas company is not liable for injuries resulting from the negligence of an independent contractor in the laying of its lines, unless it accepted work which it knew or ought to have known was so negligently done as to be unsafe and dangerous.
2. But in the absence of evidence sufficient to warrant the finding of an acceptance, formal or informal, it is error to submit the question of an acceptance with such knowledge to the determination of the jury.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ.; absent.

No. 246 October Term 1886, Sup. Ct.; court below, No. 608 September Term 1886, C. P.

In the court below an action in case for negligence was instituted by Ann Lynch against the Chartiers Valley Gas Company and the Philadelphia company, to recover damages for injuries received from an explosion of natural gas.

At the trial on May 11, 1887, the facts appeared: The Chartiers Valley Gas Company, a corporation organized under the act of May 29, 1885, P. L. 29, on May 4, 1886, entered into a written contract with Martin Joyce to lay down between certain points a twenty inch cast-iron pipe upon certain streets in Pittsburgh; inter alia, upon Penn Street, passing by the Hotel Anderson. The contract bound the said Joyce to lay the pipe, etc., refill the ditch, pave the same, and clean up streets, "all in accordance with the specifications which accompany and are a part of this agreement," and to give bond in $10,000, with approved sureties, for the faithful performance of his contract. A provision of the specifications was as follows : " All the work is to conform to the requirements of the city ordinance, regulating the laying of natural gas pipes, and to be done in a manner satisfactory to the city engineer and to the superintendent of the first party. The work shall not be considered finished, or any money due thereon, until fully approved and certified to by said superintendent." There were provisions in the natural gas ordinance referred to, that no more than two squares of a street should be open at once ; that the city should in no event be liable for injury or damage to property by reason of assuming control and direction of the work ; nor for any loss or damage sustained by any person by reason of the laying or using of such pipes, but the same should be paid by the gas company who should indemnify the city from all loss and costs therefrom; that the work should be discontinued at the direction of the city engineer if carelessly or unskillfully done ; and that the gas company should give bond to the city in $100,000 conditioned for the faithful performance and compliance with all the terms, provisions and conditions of the ordinance.

The line of the Chartiers V. Gas Co. was laid on Penn street, at Hotel Anderson, next to the curb, the location selected by the city engineer. Five feet distant therefrom was the line of the Philadelphia Co. transporting natural gas, and

beside the latter were the lines of the Consolidated Gas Company and of the Pittsburgh Gas Company, supplying artificial gas. To get beneath a sewer on Sixth street, the contractor for the defendant company was compelled to go to a depth of eight feet at the point opposite said hotel.

On the evening of July 14, 1886, as Ann Lynch was upon the pavement on Penn street, in front of Hotel Anderson, a series of explosions of gas occurred, the flames coming up through the vault hole several feet high and from the basement windows of the hotel and adjoining buildings. The plaintiff was severely injured.

Prior to the explosion, depressions appeared in the surface of the street beneath which the line had been laid. The gas pipes already down in the street had been exposed in digging the trench. No gas was admitted into the line of the defendant company until July 29th. There was evidence that the company's superintendent and their engineer visited the line from time to time, the latter to see the tests applied. The part of the line where the accident occurred had been completed about two days before the explosion; the contractor was still at work a short distance further down the street, but there was no direct testimony whether or not the line at the place of the injury had been accepted by the company. Investigation after the explosion disclosed that, from the careless refilling and tamping of the trench, the neighboring gas pipes had afterwards settled down, resulting in the breaking of an elbow connecting a service pipe with the Philadelphia Co.'s main, and other injuries of a like nature, causing an escape of gas. It was in evidence that artificial gas from the other lines was mixed with the natural gas in the explosion. Another case of like character was tried with this one.

The court, STOWE, P. J., charged the jury orally as follows:

As has been admitted all around, there is no doubt but that each of these plaintiffs was injured by an explosion that took place at the time and place they say it did. I presume the jury will have no difficulty in coming to the conclusion it was an explosion of gas, either natural or artificial, or perhaps both combined; and that it was the result of gas escaping from broken pipes at some place in the neighborhood of where the

explosion occurred. If you should so think, you inquire whose fault it was that this gas exploded; and, while I think of it, I indorse fully the position, that even if there was a mixture of artificial gas with natural gas, or if the gas that exploded was all artificial gas, you could not give a verdict against the artificial gas companies even, if in fault, which it does not appear to have been. If it was the breaking of the pipe which brought about the injury, and that breaking was occasioned by the negligence or misconduct of the Chartiers Valley Gas Company in their excavation of, or in the manner in which they filled up the trench in which they laid their pipe, that company would be responsible in damages for the whole injury done; because the accident and the damage was the result of its misconduct; and it would not be relieved even if it turned out that in this particular case the damage was all from the escape of artificial gas—provided the breaking of the artificial gas pipes was the result of the negligence or misconduct of the Chartiers Valley Gas Company. If there was any gas came from the Philadelphia Company's line, that company would not be liable, because it did nothing—if you assume, as appears to be admitted all around, and as the evidence seems to me clearly to show, that its lines were laid properly in the first place—which was negligent, or which would render them responsible for the breaking of a line that occurred in the manner in which this must have occurred. As I said to the counsel representing that company, I can see nothing that would justify the jury in finding a verdict against that company. The question, however, comes up, and it is for you to look at, with reference to what you have before you, as to the probabilities of the gas emanating from the pipes of the Philadelphia Company. You have no gas at that time in the pipes of the Chartiers Valley Gas Company; you have a broken joint or " L " as it is called, from which gas was found escaping, in the neighborhood of where this explosion took place, and you have gas emanating from probably the other lines. Taking all these matters into consideration, if you believe that there was natural gas involved in the explosion, then, of course, that gas must have come from the line of the Philadelphia Company, and that company, therefore, would probably be held liable if the breaking of its lines resulted from any fault, or misconduct, or negligence on its

part. Putting it in that light, under the testimony and assuming that the jury will probably or may probably conclude that some of the gas at least that caused this trouble emanated from the Philadelphia Company line, then you are to go further. That, of itself, will not render the company liable, if you believe the lines were made of proper material, properly located and in proper working order at the time of this injury, as the evidence indicates very clearly to my mind they were. The evidence shows that they were put down in the right way, and shows in addition to that that they had been in working order for some very considerable length of time, and that there was no trouble, and when the investigation was made there was nothing wrong with the line except at this L which was broken, and the breaking of which most probably—to my mind clearly— resulted from the sinking of the ground in and about the trench that had been made there by the Chartiers Valley Company.

It is alleged by counsel for the plaintiffs that that company is liable, because while this work was going on—the laying of the lines—the superintendent passed along there from time to time and saw the manner in which the work was done. If the evidence satisfies you that he saw the work being done there in such a way as to injure his lines, he would, as the representative of that company, have been in default if he did not take some means to protect them. But you must recollect that at this time the contractor was under no control of the superintendent. He had the legal right to go there and dig out these trenches and fill them up in any reasonable way, subject to the control of the city official whose business it was to see that it was done in a reasonably proper way for the protection of the streets as well as the protection of the public ; and before the company could be held liable for his default, it should be apparent, it seems to me, from the testimony, that he neglected to do something which it was his right to do by interfering, not simply with remonstrance. The breaking of those pipes, it would seem to my mind, arose from the fact that the earth was not sufficiently tamped ; that the dirt was thrown in carelessly and loosely; and the failure of the Chartiers company to tamp or properly solidify the dirt as they put it in, was the cause, when the rains came, of its sinking away, and for that reason the weight of the ground above crushed

CHARTIERS V. GAS CO. v. LYNCH.

the lines out of place.   The Philadelphia Company's service line was pressed out of place.   Being of a material that would yield, wrought iron, it was not broken, but this L broke, and while it is not for me to decide the question for the jury, it does seem to me, as I suggested to counsel, if there is any evidence that would justify a finding against the Philadelphia Company, it is very slight.   At the same time I say again, as I said before, these matters must be determined by the jury, not by the court.   If we think after verdict there is not sufficient evidence the law gives us a right to interfere.   The law puts the matter in the hands of the jury in the first place, and so in this case, whatever my opinion may be, it is no more than the opinion of any other gentleman in the case, and it is not entitled to have any weight with you.

Then you come to the main question, as it seems to me, the question of the liability of the Chartiers company.   It has been shown in evidence that this work was done by Martin Joyce under a contract between him and that company, and it has been very earnestly urged here that under the rule of law in Pennsylvania if he was in default, if this accident occurred by reason of any negligence of his, the company is not liable, and to a certain extent that is true.   [If then it should turn out, as alleged by the counsel for the Chartiers company (although I do not so understand the fact) that at the time of this explosion Martin Joyce had, by virtue of his contract, still the exclusive control of the part of the line where the accident occurred, the company cannot be held liable ; but if he had handed it over, or if it had been received and recognized as under the control of the company—that part of the line at that time—then they may be held liable too for his misconduct, provided the facts satisfy you that at the time it was accepted by the company or the control taken, the company knew, or ought to have known—could have known by a proper examination of the line, that there was likely to be some sinking of the earth that might probably disturb the other lines and occasion an explosion.   They are bound to take into consideration the fact of these probabilities.] [6]

We all know the dangerous character of natural gas, its explosive quality and the absolute necessity there is for so locating the lines and so making them that they will not be

obstructed and broken. The gas, as it appeared in this case, permeated the earth to a very considerable distance, got around into the buildings, two or three of them probably, and the great wonder is the explosion did not do a great deal more damage than it did. We have had evidence in court that gas will permeate the earth for a very considerable distance. In one case which I tried in Washington county the evidence showed it permeated probably ninety or a hundred feet into a house, by degrees worked into the fire, exploded and blew the whole house to pieces, blew the occupants out of the building into the yard, injured them considerably and burned the house, and the gas, although it was cut off at six o'clock in the morning—the explosion occurring at five—continued to burn with flame from five to ten feet high, up until late in the forenoon, showing that the earth had absorbed it like a sponge, and by degrees it worked out and burned just as it did here. In this case the gas was turned off a considerable time before the fire ceased to make its appearance, and the reason of that is, the gas first gets into the soft earth, is absorbed and by degrees works out.

[The whole question as to the liability of the Chartiers gas company depends on whether or not that company has exercised reasonable care in the use and maintenance of the line after it came under their control, after it passed out of the control of Martin Joyce; or whether or not at the time they took it from him, assuming it was done before this accident (which I do in presenting this case this way), they failed to make that kind of an inspection that they ought to have made for the purpose of seeing whether the line was in good order or not.][6] I have no idea that the law is such that I may employ a man to do a job, and when it is apparent to me that his work may tumble down—say to build a house on a street—take it off his hands and not be responsible if it tumbles down the next day and injures somebody. I have no business to take it off his hands if I have taken it. It is my duty to see, if the house is unsafe, that it is taken down or propped up, and that is the principle that covers this case, so far as the Chartiers Valley Gas Company is concerned.

Plaintiff's points:

Charge of Court below.

1. That the contract in evidence between the Chartiers V. Gas Company and Martin Joyce will not relieve the said company from liability in this case, if the jury find that the injuries complained of resulted from the negligent laying of the pipes of said company by said Joyce.

Answer : Refused.

2. That if Martin Joyce did his work under the contract between him and the Chartiers gas company in a negligent and improper manner, so that a reasonably prudent man would apprehend injury to the pipes of the other gas companies, and the Chartiers company knew that the work had been negligently and improperly done, but, nevertheless, took it off his hands, and ought as reasonably prudent men to have anticipated injury to the pipes of the other companies, by the sinking of the ground, resulting from Joyce's improper and negligent work, said Chartiers gas company will be liable, notwithstanding the terms of the contract between Joyce and said company.

Answer : Affirmed.[1]

3. If, after Joyce finished and delivered the work, at the place of the accident, the said Chartiers gas company knew or ought to have known that the ground was insufficiently tamped and was sinking, said company were bound to anticipate probable injury to the pipes of the other companies, and repair the work, and the failure of said company so to do was negligence.

Answer : Affirmed.[2]

4. Under the contract in evidence a duty rested on the Chartiers company to see that Joyce had done his work properly before accepting it, and if without proper examination, they took it off his hands, and the injury resulted from Joyce's negligent work, the gas company will not be excused.

Answer : Refused.

This point may need some explanation. The defendant company, under the contract in evidence, could not be held liable for any damage directly arising from the negligence or misconduct of the contractor, during the time he had charge of the work, and while it was under his exclusive control. After defendant company took charge it would be liable for any injury arising from a cause that was visible or apparent, or such as could have been discovered by the exercise of rea-

sonable care and prudence on the part of the company before it was accepted from the contractor, or such as became apparent or could have been discovered afterwards by the company, even if such cause arose from or was the result of negligence of the contractor previous to acceptance.[3]

Defendant's points:

1. If the jury should find from the evidence that the digging of the trench, laying of the pipes, filling up the trench, etc., was done by Martin Joyce under the contract in evidence, between said Joyce and the said Chartiers Valley Gas Company, their verdict should be for the defendant, the Chartiers Valley Gas Company.

Answer: Refused.[4]

2. Under the pleadings and evidence the verdict must be for the defendant, the Chartiers Valley Gas Company.

Answer: Refused.[5]

The verdict of the jury was for the plaintiff for $500, as against the Chartiers V. Gas Co., and in favor of the defendant, the Philadelphia Company, and, judgment being entered, the Chartiers V. Gas Co. took this writ assigning for error:

1, 2. The answers to the plaintiff's points [1] [2]

3. The qualification of the answer to the plaintiff's point. [3]

4, 5. The answers to the defendant's points. [4] [5]

6. The parts of the charge embraced in [ ] [6] [ ] [6]

*Mr. James C. Doty* (with him *Mr. John M. Kennedy*), for the plaintiff in error:

1. One who renders service in the course of a lawful employment, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished, is an independent contractor; and, that the employer cannot be held to answer in damages for injury to person or property resulting from the negligence of such contractor, is a proposition so well settled that it would be idle to argue the question: Edmundson v. Railroad Co., 111 Pa. 316; Erie v. Caulkins, 85 Pa. 247; Harrison v. Collins, 86 Pa. 153; Wray v. Evans, 80 Pa. 102; Painter v. Pittsburgh, 46 Pa. 213. It is clear that the gas company brought itself within the principle referred to.

2. There was not a scintilla of evidence to show that there had been an acceptance by the company of any portion of the line laid by the contractor, either at the point of the accident or anywhere else. True, the work had been completed where the explosion occurred, but the contractor was still at work one square away. Moreover the contract was entire, and the company was not bound to accept any portion until the whole was completed. The work was not to be considered finished or any money due thereon until fully approved and certified by the company's superintendent. It was error, therefore, to permit the jury to infer an acceptance on the part of the company in the face of the contract and of these facts.

*Mr. John S. Ferguson* (with whom were *John Barton & Sons*), for the defendant in error: •

1. The contract was for 14,000 feet of work at $1.75 per foot, to be paid for as each 3000 feet was completed to the extent of 85 per cent. of the price. Manifestly, the retention of the 15 per cent. on each section was to secure the completion of the remaining sections. The contract, therefore, was for the work in sections. Moreover, the city ordinance provided that not more than two squares in length of the work should be open at once—in fact the work was to be completed in sections of not more than two squares each.

2. Now the superintendent and city engineer manifestly were bound to determine as to whether the work was satisfactorily done as it progressed. The mode of execution necessarily must be inspected by them at the time it was being done, for as soon as the pavement was laid they could not expect to remove it and then determine. So, as a matter of fact, we find that the gas company had its engineer on the line of the work daily. But, in fact, the gas company did not contract with Joyce to do the work in a good and workmanlike manner, or according to his judgment, or according to any standard established at the time of making the contract. On the contrary, they reserved the right to determine for themselves how he should do it, and this was particularly necessary in work of this sort; for the result of negligent work might not manifest itself immediately, and if disaster happened it would be difficult to determine whether or not the blame rested with the

contractor. Duty to the public as well as the interest of the company demanded that they should, as the work progressed, see that it was being safely done. The provision in the contract, therefore, put Joyce completely under the authority of the company as to the manner of doing such parts of the work as are referred to in the provision requiring it to be done to the satisfaction of the superintendent. He was therefore not an independent contractor in the sense claimed for him in this case.

3. But grant that Joyce was an independent contractor. If such, he was such for and with the company, which knew how he was doing the work and its probable result. The case is much like Chicago v. Robbins, 2 Amer. Law Reg. N. S. 529, cited and approved to this extent at least in Painter v. Pittsburgh, 46 Pa. 213. Besides, that the portion of the work where the explosion happened had been accepted, is fairly inferable from the contract itself, the city ordinance and the nature of the work to be done. There was evidence of the company's knowledge of the reckless doing of the work; and that fact with the supervisory control given by the contract, the apparent finishing of that block of the work, and that Joyce was working on the next block, estopped the company from denying an acceptance as against innocent passers-by.

OPINION, MR. JUSTICE STERRETT:

In view of the clearly established contract relation existing between the Chartiers gas company and Martin Joyce, the contractor, the learned president of the Common Pleas was clearly right in his conclusion that the company " could not be held liable for any damages, directly arising from the negligence or misconduct of the contractor, during the time he had charge of the work and while it was under his exclusive control."

In my judgment, it is to be regretted that corporations, such as plaintiff in error, invested with the right of appropriating private property and entering upon public highways for the purpose of laying pipes in which to transport and distribute one of the most dangerous natural agencies in existence, should be permitted to relieve themselves of the duties and responsibilities incident to the business, by letting part of the work, requiring the highest degree of care, to an independent contrac-

tor; but, the law on this subject has been too firmly settled to admit of any doubt, and must therefore be administered as we find it.

Without questioning the non-liability of the company for damages caused by the contractor's negligence while the work of laying the pipes, etc., was under his exclusive control, plaintiff below contended the company was still liable under the circumstances stated in two of the points for charge submitted by her, viz.: "2. That if Martin Joyce did his work under the contract, between him and the Chartiers gas company, in a negligent and improper manner, so that a reasonably prudent man would apprehend injury to the pipes of the other gas companies, and the Chartiers gas company knew that the work had been negligently done, but nevertheless took it off his hands, and ought as reasonably prudent men to have anticipated injury to the pipes of the other companies, by the sinking of the ground resulting from Joyce's improper and negligent work, said Chartiers gas company will be liable, notwithstanding the terms of the contract between Joyce and said Chartiers gas company." "3. If, after Joyce finished and delivered the work at the place of the accident, the said Chartiers gas company knew, or ought to have known, that the ground was insufficiently tamped and was sinking, said Chartiers gas company was bound to anticipate probable injury to the pipes of the other companies, and repair the work, and failure of said company to do so was negligence."

These propositions were both broadly affirmed by the court, and the case was submitted to the jury on the questions of fact involved therein, viz.: whether the company had accepted and taken off the contractor's hands that portion of the work where the negligence of the latter manifested itself by the explosion, etc. The case was thus made to turn upon the acceptance by the company of work so negligently and improperly done that the company knew, or ought to have known, that it was unsafe and positively dangerous. To such a submission there could be no possible objection, if there was any evidence from which the jury were warranted in finding that the work had been accepted by the company and taken off the hands of the contractor; but, unfortunately for plaintiff below, there was not. We have examined the testimony pre-

sented to us, and find no evidence from which the jury was warranted in finding an acceptance, either formal or informal, of the work at the point where the explosion occurred. We are therefore constrained to reverse the judgment for error in submitting the case to the jury, on a vital question of fact of which there was no sufficient evidence. This error pervades all the specifications.

Judgment reversed.