## CHARTIERS V. GAS CO. v. WATERS.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 24, 1888—Decided January 7, 1889.

1. A natural gas company, organized under the act of May 29, 1885, P. L. 29, is not liable for injuries resulting from the negligence of an independent contractor occurring before the acceptance of the work with notice of the defect.

2. And this, notwithstanding the second proviso of § 10 of said act, providing: "That any company laying a pipe line under the provisions hereof shall be liable for all damages occasioned by reason of the negligence of such gas company."

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 12 October Term 1888, Sup. Ct.; court below, No. 189 January Term 1887, C. P. No. 2.

To the first Monday of December, 1886, a summons in case issued in an action by W. W. Waters against the Philadelphia Co., the Chartiers Valley Gas Co., and the Pittsburgh Gas Co. The defendants pleaded, not guilty.

When the case was called for trial on September 27, 1887, the plaintiff took a nonsuit against the Pittsburgh Gas Co., when the following facts appeared in evidence:

On May 4, 1886, the Chartiers V. Gas Co., a corporation organized under the act of May 29, 1885, P. L. 29, entered into a written contract with one Martin Joyce to lay down a twenty inch cast-iron main between certain points on certain streets in Pittsburgh, inter alia, upon Penn street, passing Hotel Anderson. The contract bound Joyce to dig the trench, to lay the pipe, refill the trench, pave and clean up the streets, etc., "all in accordance with the specifications which accompany and are a part of this agreement," and to give bond in $10,000 with approved sureties, "to insure the faithful performance of this contract." The specifications referred to embraced, inter alia, the following provisions:

"Second party is to furnish at his own cost all the labor and tools necessary for digging trench, laying and testing pipe, in the manner and within the time herein specified; to furnish labor for putting in ventilating posts or escapes, sleeves, gates and fittings, and to furnish all lead used in caulking, lumber to brace trench, build bridges or barricades, and all appliances for testing the pipe, and all other material or supplies necessary for the performance of the work, excepting cast iron pipe, sleeves, valves, fittings, gate boxes and covers for main pipes, small escape pipe and fittings for same, and lamp posts and covers, which shall be furnished and delivered along the ditch by the said first party.

*        *        *        *        *        *        *        *

"Said second party is to furnish watchmen, red lights at night, and to put up such barricades wherever said ditch is open as may be necessary for the proper protection against

accidents; bridge said ditch whenever the same may be necessary for the public travel; to brace and protect all water or other pipes; and whenever any damage is done to the same, it is to be repaired by the said second party at his own cost; to fill up and tamp the dirt in said ditch, repave street, relay pavement, set curb stones, and clean up the street to the satisfaction of the' superintendent of said first party and the city engineer."

The line of the Chartiers V. Gas Co. was laid on Penn street, at Hotel Anderson, next to the curb, the location having been selected by the city engineer.   Five feet distant from it was the line of the Philadelphia Co., transporting natural gas, and beside the latter were the lines of the Consolidated Gas Co. and the Pittsburgh Gas Co., supplying artificial gas. To get beneath a sewer on Sixth street, crossing Penn street, the contractor for the Chartiers V. Gas Co. had to go to a depth of eight feet at a point on Penn street opposite said hotel.

The plaintiff had a book and stationery store on Penn street adjoining the hotel, and on the evening of July 14, 1886, a series of explosions occurred upon the pavement and in the adjoining buildings, resulting in injuries to the plaintiff's stock.

Investigation after the explosion disclosed, that the gas mains already in the street had been exposed in digging the trench, and that from careless bracing, careless re-filling and tamping of the trench, they had settled down, resulting in the breaking of an elbow connecting a service pipe with the Philadelphia Co.'s main, and other injuries of a like nature, permitting an escape of gas.   No gas was admitted into the Chartiers V. Gas Co.'s line until July 29th, and at the time of the explosion, the contractor was still engaged upon the line, a short distance below where the explosion occurred.

The court, EWING, P. J., upon the question raised in this court instructed the jury:

If the Chartiers company in making this excavation and in filling up, or at the time of filling up, used reasonable care under the circumstances (and that would be great care under the perils of this case) in supporting that pipe against what would be the natural consequences of a supervening weight,

Charge of Court below.

and after they had exercised that care and precaution neces-
sary from the great danger of the situation an accident had
occurred, they would not be liable : they would have perform-
ed their duty, and an injury occurring after that would be one
of those accidents that every man is liable to suffer and has to
bear himself. But if they were guilty of negligence in a fail-
ure to properly support and prop this pipe that they had under-
mined, and the accident occurred by reason of their negligence,
and was the natural result of it, then they would be liable.
[The Chartiers company claims, however, to be free from
liability, because, they say, they had given out a contract to do
this entire work (apparently laying their main pipe all through
Pittsburgh) to one Martin Joyce, and that it was his duty to
see to this propping and the proper filling of the trench ; that
as they had no power over it, therefore they are not liable,
and have asked us to so instruct you, which we refuse to do.
The ordinary rule is, as claimed by the learned counsel for
the Chartiers company, namely, that where an owner or a
company having a work to perform gives out the contract as
a whole to some independent contractor, who has charge of
the entire business, and an accident occurs by reason of the
negligence of that contractor, the owner is not responsible.
That is a general rule and a particular rule. It has some
exceptions, however. If the owner or the party giving out
the contract has a special duty to perform to another, private
or public, the failure to do which is negligence, he cannot get
rid of the obligation by giving out a contract to a third party.
If, when the contract is given out for the work in contempla-
tion and necessary to be performed, great danger is incurred,
or an injury may be done to the public or to some private
person that requires great care to guard against, the owner or
party giving out the contract must see that the contractor or
somebody else guards against it. As, for instance, if a con-
tract for a building contemplates a great excavation out into
the street by the contractor, which is very dangerous, I take
it that the owner must see that the public is protected in that
case. The failure to perform some duty that is an ordinary
one of the contractor, or the doing of some act by the contrac-
tor not necessarily contemplated in the contract, would be the
negligence of the contractor alone ; as in this case, any act

causing an injury done by Martin Joyce, which was not fairly necessary in the contemplation of the contract between him and the Chartiers company, would be Martin Joyce's negligence and not that of the company. For instance, if he failed to put lights or proper protections in his trench and somebody fell into it (and a great many like things) the company would not be responsible. But the very contract itself in this case contemplated and made necessary the excavation and undermining of this service pipe. It was in contemplation of the parties that it should be done. It was the thing that the Chartiers company directed by its contract should be done by Martin Joyce, and they owe a duty, as I have said in answer to one of the points, to the owner of that pipe and to the public, to take reasonable care to see that it was properly supported; and the consequences of failure to perform that duty cannot be gotten rid of, simply because there was a general contract on the part of Martin Joyce to do it, and he may be, and no doubt is, responsible to them for his negligence. As I have said, if this accident occurred by the negligence of Martin Joyce in doing something not contemplated in the contract— if, for instance, he had properly protected this service pipe and given it a secure and complete foundation so that it would not sink down, and then negligently himself in filling up or paving over it caused the injury, the Chartiers company would not be responsible. That is something that would be Martin Joyce's negligence; that is something not necessarily in contemplation of the parties when the contract was made.] [3] The question I may say to the jury, as I have stated to counsel in your presence, is in my judgment a close one. I do not think it is absolutely ruled by any case in Pennsylvania. I have given you the instructions as to what in my judgment is the proper rule of law under the peculiar circumstances of this case, and under the act of assembly and the ordinance of the city of Pittsburgh, and if I am wrong the Supreme Court will correct me. I have given the ruling that I think is supported by authorities in this country and in England, and a rule that in my judgment is necessary for the proper protection of the public. . . . . .

Counsel for the Chartiers Valley Gas Company, respectfully ask the court to charge the jury as follows, viz.:

Charge of Court below.

1. If the jury should find from the evidence that the digging of the trench, laying of the pipes, filling the trench, etc., was done by Martin Joyce, under the contract in evidence between said Joyce and the Chartiers Valley Gas Company, and that the injury was caused by the negligence of Joyce in doing said work, and before it had been accepted and taken off Joyce's hands by said company, Joyce would be the one liable to plaintiff, and the verdict in this case should be for the Chartiers Valley Gas Company, defendant.

2. There is no sufficient evidence to justify the jury in finding a verdict against the Chartiers Valley Gas Company.

Answer : The points submitted by counsel for the Chartiers Valley Gas Company are refused except as affirmed in the general charge. There is evidence from which the jury may fairly find, that the accident occurred by reason of the breaking of the service pipe of the Philadelphia Company, and that the breaking of this pipe was caused by the taking away the proper support of said pipe by the digging of the trench and laying of the large main of the Chartiers Valley Gas Company, and failure to renew the support. When the Chartiers company undertook to lay its main along Penn street, in the city of Pittsburgh, under the act of assembly and the city ordinance, and contracted for the laying thereof, it owed to the Philadelphia Company, which had already had its pipes there, and to the property holders and to the public, a duty of supporting such pipes. This duty was a positive obligation which they could not get rid of by giving a contract to a third party to do the work. If the pipe broken was necessarily undermined and its support taken away by the laying of the Chartiers company's main, as contemplated in the contract with Martin Joyce, and it was not supported by that company or its agent or contractor, but left without reasonable or proper support from an ordinary pressure from above, and thereby it was broken so as to cause the gas to escape, and thereby cause the accident, the Chartiers company cannot escape the consequence of the neglect of its obligation, by showing that they had contracted with another to perform the duty. The act of assembly provides that "any company laying a pipe line under the provisions of the act shall be liable for all damages occasioned by reason of the negligence of said company." There

is also evidence from which the jury may fairly find—in fact it is the uncontradicted testimony—that the Chartiers company's main had been fully laid and completed for a considerable time, past the place complained of, and the trench filled up and the pavement relaid, and also that the superintendent of the company had full notice and actual knowledge of the faulty manner in which its contractor was performing the duty of securing the pipes of other companies.[1]

The jury returned a verdict for the plaintiff against the Chartiers V. Gas. Co. for $632.42, and for the defendant as to the Philadelphia Co. Judgment having been entered, the Chartiers V. Gas. Co. took this writ, assigning as error:

1, 2. The answer to defendant's points.[1]

3. The part of the charge embraced in [ ] [3]

*Mr. James R. Sterrett* (with him *Mr. John M. Kennedy* and *Mr. James C. Doty*), for the plaintiff in error:

1. The evidence offered upon the trial below in this case was almost identical with that offered in the trial of Chartiers V. Gas. Co. v. Lynch, 118 Pa. 362, and no question is involved that is not fully covered by the decision in that case, which, however, had not been decided when this case was tried. It follows that the gas company brought itself within the well known principle that one who renders services in the course of a lawful employment, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, is an independent contractor, and his principal is not liable for his negligence. It is difficult to see how the provision of the statute, the second proviso to § 10, act of May 29, 1885, affects the company's liability, as it would be liable for its own negligent act irrespective of any such provision.

*Mr. John S. Ferguson* (with him *Mr. F. C. Osburn*), for the defendant in error:

1. In Chartiers V. Gas. Co. v. Lynch, the ruling of the court below upon the question raised in this case was affirmed with regret. The case was tried upon the assumption that the liability arose by reason of the gas company having taken negli-

gent work off the hands of the contractor, knowing that it was negligently and dangerously done, and the judgment was reversed because of insufficient evidence to sustain the points made. The present case below was put on a modification of the doctrine as to independent contractors.

2. The distinction contended for is akin to that which arises in certain cases between master and servant. When the master or superior places entire charge of his business, or a distinct branch of it in the hands of an agent or subordinate, exercising no discretion or oversight of his own, the master is held liable for the negligence of such agent or subordinate: Mullan v. Steamship Co., 78 Pa. 25; New York etc. R. Co. v. Bell, 112 Pa. 409. So in this case, when the property or the rights of others are necessarily to be interfered with, we claim the responsibility cannot be delegated. If, of two adjoining houses having a mutual easement of support, one is to be taken down, and the act necessarily endangers the other, there is no justice, whatever the law may be, in permitting the owner who removes the building to shift his duty over upon a contractor who may be wholly irresponsible.

3. Where the employer of the contractor has no duties, but the contractor has, the contractor is liable; but where the employer has a duty towards the plaintiff, he cannot delegate its performance to a third person: McLaughlin v. Pryor, 4 M. & G. 48. Where an obligation is imposed upon any person by statute, he cannot escape it by employing a contractor: Smith on Negligence, 88*; Gray v. Pullen, 5 B. & S. 970. Where a corporation has a positive duty to perform, it is no answer to an allegation of negligence on its part, that it contracted with a competent person for the performance of the work: Grote v. Railway Co., 2 Exch. 251. Now, the act of 1885 made the defendant company liable for all damages occasioned by its negligence, meaning, of course, in the performance of any duty under its charter, one of which was the duty of laying these mains.

OPINION, MR. JUSTICE HAND:

This was an action for negligence alleged against the defendants while their pipes were being laid, in not protecting the gas pipes of another company, whereby an explosion took

place which burned and injured the plaintiff's goods in his store.

The defence set up was, that the whole work was contracted to one Joyce, and the injury was caused by his negligence. The material facts of the case are the same as in the case of the same Company v. Lynch, 118 Pa. 362. It is not necessary to repeat them here. The contract as there stated clearly established the relation which in the ordinary cases relieves the principal from liability and places it upon the contractor. An effort is made to distinguish the law of this case from the admitted principles recognized in Gas Company v. Lynch, upon the ground that a statutory obligation was laid upon the defendants, from which they could not be relieved by committing the execution of the work to a contractor. The merits of this controversy are covered by the first assignment of error. It is as follows:

"If the jury should find from the evidence that the digging of the trench, laying of the pipes, filling the trench, etc., was done by Martin Joyce, under the contract in evidence, between the said Joyce and the Chartiers Valley Gas Company, and the injury was caused by the negligence of Joyce in doing said work, and before it had been accepted and taken off Joyce's hands by said company, Joyce would be the one most liable to plaintiff, and the verdict in this case should be for the defendants, the Chartiers Valley Gas Company."

"Answer: The point submitted by counsel for the Chartiers Valley Gas Company is refused except as affirmed in the general charge. There is evidence from which the jury may fairly find that the accident occurred by reason of the breaking of the service pipe of the Philadelphia Company, and that the breaking of this pipe was caused by the taking away the proper support of said pipe by the digging of a trench and laying of the large main of the Chartiers Valley Gas Company, and failure to renew the support. When the Chartiers company undertook to lay its main along Penn street in the city of Pittsburgh, under the act of assembly and the city ordinance, and contracted for the laying thereof, it owed to the Philadelphia Company, which had already had its pipes there, and to the property holders and to the public a duty of supporting such pipes. This duty was a positive obligation of which they

could not get rid by giving a contract to a third party to do the work. If the pipe broken was necessarily undermined and its support taken away by the laying of the Chartiers company's main, as contemplated in the contract with Martin Joyce, and it was not supported by that company, or its agent or contractor, but left without reasonable or proper support from an ordinary pressure from above and thereby it was broken, so as to cause the gas to escape, and thereby cause the accident, the Chartiers company cannot escape the consequence of the neglect of its obligation by showing that they had contracted with another to perform the duty. The act of assembly provides that 'any company laying a pipe-line under the provisions of the act shall be liable for all damages occasioned by reason of the negligence of said company.' There is also evidence from which the jury may fairly find, in fact it is the uncontradicted testimony, that the Chartiers company's main had been fully laid and completed for a considerable time past the place complained of, and the trench filled up and the pavement relaid, and, also, that the superintendent of the company had full notice and actual knowledge of the faulty manner in which its contractor was performing the duty of securing the pipes of other companies."

The facts of this case upon an examination show that by a distinct and written contract Joyce was an independent contractor; that he was expressly required to brace and protect all water and other pipes; that by his neglect one of the pipes of the Philadelphia Company not being sufficiently braced or protected by tamping broke off, discharged its gas, and an explosion resulted which caused the damage. There are no facts proved to take the case out of the rule which relieves the defendant company. The latter part of the answer of the learned judge which relates to an implied acceptance of the work from the contractor, and full notice of the faulty manner in which the contractor performed his work, is not sustained by the evidence, and the proper disposition of the case rests upon the first paragraph of the answer to the defendant's first point. If there had been an acceptance of the work and proof of notice, the case would be different.

The remaining question is one of a statutory obligation. We answer this somewhat at length. It is admitted that the acci-

dent occurred by reason of the breaking of the service pipe of the Philadelphia Company, because of insufficient support caused by Joyce, the contractor. It is, however, urged that under the act of assembly and the city ordinance the defendant owed to the Philadelphia Company, and the property holders and the public, a duty of supporting such pipes, and hence the Chartiers company is liable. We have seen that so far as the immediate facts of this case are concerned, as between the company and the contractor, the former is not liable. Is she liable under the principle that an express statutory obligation is inferred from which she cannot be relieved? We can discover no such clause in the act of assembly referred to. The only sentence referred to is where the act provides that "any company laying a pipe-line under the provisions of the act shall be liable for all damages occasioned by reason of the negligence of said company." Certainly no duty is imposed by this language; no express or definite obligation is laid upon the company as regards what work she shall do or how she shall do it. It is not necessary to determine in this case whether the English rule of liability has been or should be adopted by our courts. It will be seen that this case does not come within the principles of the English cases which the learned judge below undoubtedly had in his mind, and are referred to by the learned counsel for the defendant in error.

The principle is stated in Smith on Negligence, 88: "Where an obligation is imposed by statute upon a person he cannot escape from it by employing a contractor." The case of Gray v. Pullen, 5 B. & S. 970, is cited as authority for the principle, and in his treatise the author condenses the case properly by saying: "Where a statute ordered the owner of land to make a drain and to refill it with earth, and the owner employed a contractor who neglected properly to refill the drain, it was held that the owner was liable." The case shows that there was an express and fully defined statutory duty absolutely imposed upon the owner of the premises, and how he was to perform it, and the time when, and it was properly held that he could not delegate it or shift this responsibility by employing a contractor. The judgment of the court clearly puts the case upon the fact of a statutory duty absolutely created. There is in this case no ordinance of the city shown which creates

such a duty. The learned judge seems to think that because the pipe of the Philadelphia Company was necessarily undermined and therefore contemplated by the contract, it changes the rule, because it is a necessary interference with the rights of others. The answer is, there is no necessary interference with the rights of others unless negligence exists. Both companies had their rights, and they are perfectly consistent with each other. If the company itself was guilty of negligence she would be liable for consequent injury to another's rights; if the contractor alone is guilty, he alone is liable.

The view of the learned judge would introduce an additional refinement into this branch of the law, the necessity of which is not apparent upon the facts of this case.

We are of the opinion that the point of the defendant should have been affirmed without qualification. Inasmuch as the error committed runs through the other assignments of error is is unnecessary for us to refer to them specifically. No negligence was proved against defendant.

The judgment in this case is reversed.

———◦———

123    231
26 SC 299

Argued October 24, 1888—Decided January 7, 1889.