## ALEX. BERBERICH v. JOHN EBACH ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 4, 1889—Decided January 6, 1890.
[To be reported.]

1. When the general contractor for the erection of a building accepted work from a sub-contractor, with knowledge of its condition, and the work thus accepted was so imperfect and defective as afterwards to cause the building in course of erection to fall upon adjoining property, the general contractor is liable therefor: Chartiers V. Gas Co. v. Lynch, 118 Pa. 362; Allen v. Willard, 57 Pa. 374; Homan v. Stanley, 66 Pa. 464, commented upon.

2. If the defect in the work accepted from the sub-contractor was caused, after its completion, by the manner in which other work, not embraced in the sub-contract, was done by the workmen of the general contractor, this fact is sufficient to render the principal contractor liable for such injury, although his workmen were superintended in the work by the sub-contractor.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No 192 October Term 1889, Sup. Ct.; court below, No. 452 June Term 1888, C. P. No. 1.

### Statement of Facts.

On April 30, 1889, a summons was served in an action of trespass brought by Alexander Berberich against John Ebach and Sophia, his wife, Theodore Striebecher and Albert Striebecher, to recover damages for injuries to the plaintiff's dwelling house, alleged to have been occasioned by the negligence of the defendants.    Issue.

At the trial on November 2, 1888, the following facts were shown:

The plaintiff is the owner of a leasehold estate in a lot of ground at No. 149 Ohio street in Allegheny city, on which there was a dwelling house.   In January, 1888, Mrs. Sophia Ebach, who is the owner of a leasehold in an adjoining lot, commenced the erection thereon of a three story brick building. The erection of Mrs. Ebach's building was let by herself and her husband, upon a written contract, to Albert and Theodore Striebecher, who carry on business as builders, under the name of Striebecher & Bro.   By the terms of this contract the builders had entire charge of the work, which was to be done in accordance with plans and specifications prepared by George W. Ott, architect, and to be subject to his approval, and they were required to protect adjoining properties.   Striebecher & Bro., as the general contractors, sublet various portions of the work. Among the sub-contracts was one with Ammond Grow for the stone-work, and one for the brick-work with John Becker.   The carpenter work was done by the general contractors themselves. Their contract with Grow consisted of the following written proposition and a verbal acceptance thereof:

ALLEGHENY, December 20, 1887.

M. STRIEBECHER & BROTHER:

I promise that I will do the mason and stone cutting work for Mr. Ebach's house, according to plan and specifications, for the sum of four hundred and ninety-eight dollars ($498).

AMMOND GROW.

Two or three days after Grow had completed the foundation walls, it was found that the wall on the side of the house away from the plaintiff's property had bulged inward, toward the cellar, from three to six inches.   The wall was built in freezing weather.   After it was built, an open space on the outside of it was filled in with earth and rubbish.   Milder weather followed, and the sun shining on the inside face of the wall soft-

ened the mortar, so that the pressure of the earth, which had been filled in behind it, caused the bulging to take place. This filling in was done by workmen in the employ of Striebecher & Bro., but one of the defendants testified that they were working at the time under Grow and that he commanded them.

Albert Striebecher's attention being called to the condition of the wall, he conferred with Grow about it. Grow told Striebecher to have the filled-in earth removed, and he, Grow, would get the wall back into place. The earth was accordingly removed and braces put against the wall, and it came back into line. Testimony for the plaintiff tended to show that after having thus bulged and been pressed back into place, the wall was not a safe one to build on; while testimony for the defendants tended to show that when a wall is new, and before the mortar has become fully set, such action will not injure it, and that this was the case with the wall in question.

Ott, the architect, saw the bulged wall and knew what was done to remedy it. With his approval the first floor joists were laid upon it by Striebecher & Bro., and Becker then, by their order, built on it the brick wall. The work of building proceeded regularly until the brick walls were completed to a height of about thirty-three feet, the joists for the first, second and third floors had been laid, and the building was about ready for the roof, when, on the night of April 5, 1888, during a wind storm, the brick walls fell down upon the plaintiff's house, crushing it in and entirely demolishing the larger part of it. The testimony tended to establish that the cause of the fall was weakness of the foundation wall, resulting from the bulging and pressing back before mentioned. Portions of the testimony will be found quoted in the opinion of the Supreme Court, infra.

At the close of the testimony the court, STOWE, P. J., charged the jury in part as follows :

There does not seem to be any dispute about one matter in this case; that is, that Mr. Ebach was the owner of this property and he employed an architect by the name of Ott to get up plans. There is no indication that he was not entirely competent, and you are bound to presume that he was a competent architect. He got up the plans and specifications for

this building. Mr. Ebach had done all he was bound to do, all that any man is bound to do when he undertakes to put up a building, . . . . . and, therefore, we say that, so far as the owner is concerned, there is nothing that would justify a verdict against him.

Then we come to the parties who had the contract for this whole work, the Striebechers. They took the contract for the whole work, and were to build it according to certain plans and specifications, subject to the supervision of some one, who turns out to be Mr. Ott. They are carpenters and contractors. Of course, carpenters do not build brick walls nor stone walls, and the only way by which they could get that work done would be to employ some one who made it his business to do such work. They, with the knowledge at least of Ebach, had these contracts given out. I will say here, that it makes no difference whether Ebach knew it or not. They had the contract, and had the right to give out any portion they saw fit, if there was no restriction, as there was not, in this article of agreement. They employed Grow to do the stone-work, and Becker to do the brick-work. . . . . .

It seems Striebecher gave out these contracts and that he had no further charge over that portion of the work, as we understand the testimony; and we put it to the jury in that way. He gave out the stone-work to Grow, who was to do it under the supervision of the architect. He had to do it apparently in accordance with the suggestions of the architect, at least so far as his testimony is concerned. But, at any rate, that was a matter, as we think now, that Mr. Striebecher had nothing to do with, no responsibility, I mean, arising out of it, in case it fell down. The same would apply to the brick wall. The house was built, stood there a while, and this storm came along. It does not seem to have been a very extraordinary storm. . . . . Probably the jury will think that so far as that is concerned, there is nothing to indicate that it was an extraordinary storm that did this mischief. It would show in that case, however, that from some cause or other, that wall was not properly built. If this strong wind—not one that would amount to what we call the act of God ordinarily—did, from some cause or other, bring down this wall, then we come back to the question, who is to blame for that? Certainly

only the parties that were responsible for it; and if the view we take of the matter is law, the defendants, Striebechers, were not responsible. Under their contract, they had no right to control the building of this wall, and there is no evidence to show that it was so manifestly and improperly built as to make it negligence on their part to go ahead and put the super-structure on. Then Grow, if his work was the cause of the accident, should be held responsible alone, and not the Strie-bechers, who had no control over it. If the jury come to that conclusion, and it seems to me the evidence is all one way upon that question, then the verdict ought to be for the de-fendants. They have not sued the right parties. . . . . As it stands now, with the view I have on the subject, if the jury were charged in a general way and they found a verdict for the plaintiff, I do not see how, with my view of the law under the facts of this case, I could conscientiously let it stand. . . . .

The plaintiff's counsel request the court to charge :

1. It being admitted on the part of defendants that Strie-becher Bros. had the contract for the building which fell down, and that the building fell down while yet unfinished and on the contractors' hands, this is prima facie evidence of negligence in the construction of the building, and the builders would be liable for the damages caused to plaintiff by the fall.

Answer : Affirmed.

2. If Striebecher & Bro., made a sub-contract with Ammond Grow for the building of the stone foundation walls, and Grow did the work in a negligent and unskilful manner, so that a reasonably prudent man would apprehend danger of the wall giving way under the weight of the brick-work to be placed thereon, and the defendants, Striebecher & Bro., knew, that the work was negligently and improperly done, and ought, as reasonably prudent men, to have anticipated that the wall would fall down under the weight of the structure to be placed thereon, but nevertheless took the wall off Grow's hands, Striebecher Bros. will be liable, notwithstanding the terms of the contract between them and Grow.

Answer : Refused, there being no sufficient evidence to base it on.[1]

3. If the foundation wall built by Grow was insufficient to sustain the weight of the structure placed thereon, either by

Opinion of Court below.

reason of its negligent construction in the first instance, or by reason of its being bulged in by the earth thrown back of the wall, and then pressed back to its place, and such defect was known to the defendants, Striebecher & Bro., or could have been discovered by them by the exercise of reasonable care and prudence, and said defendants, notwithstanding the defect, erected or caused to be erected the brick wall which fell over and caused the damage to plaintiff, they will be liable for said damage.

Answer: Refused, same as point 3.[2]

4. The fact that the fall of the building may have been produced by a storm will not constitute a defence, unless the storm was an extraordinary one, an unexpected visitation whose coming was not foreshadowed by the usual course of nature; and there is no sufficient evidence in this case that the storm was of that character, and therefore the defendants cannot avail themselves of that defence.

Answer: Affirmed.

Under what I have said you may take a verdict for the defendants.[3]

The jury rendered a verdict for the defendants. A motion for a new trial having been argued, the court, STOWE, P. J., on January 18, 1889, filed the following opinion:

There is no sufficient evidence to show that the men who threw the dirt behind the wall were working under the control and direction of Striebecher at the time. The men were in his employ, it is true, but he says they did that work by the direction of Grow. His evidence is, " They were working under Grow, he commanded them," and this is all the evidence we have on the point. The evidence then fails to show that Striebecher had anything to do with the work that may be presumed to have caused the bulging out of the wall.

Is there sufficient evidence to go to the jury to show that Striebecher in erecting the brick wall upon the foundation as he knew it to be, or had reason to believe it to be, so far as safety is concerned, was guilty of negligence? I still think the true rule was expressed by me in Lynch v. Chartiers V. Gas Co., which is in effect that one is responsible when the danger is manifest and such as was apparent.

Here the work was all done under the supervision of a competent architect, whose duty it was to bring to bear proper knowledge and care. It is true this action will not protect the builders, Striebechers, if they are shown by the evidence to have been themselves guilty of negligence; but it is an important factor in the consideration of the question of fact, and if not prima facie evidence of no negligence, it is at least strong evidence in that direction, casting the burden of proof upon plaintiff to show such facts as will fairly satisfy the jury of actual negligence under the circumstances. In this I think the evidence entirely failed. I could not allow a verdict to stand based upon such finding of negligence by the Striebechers, and therefore must refuse a new trial.

Judgment having been entered on the verdict, the plaintiff took this appeal, specifying that the court erred:

1, 2. In the answers to the plaintiff's points.[1] [2]

3. In directing a verdict for the defendants.[3]

*Mr. A. M. Brown,* (with him *Mr. R. B. Petty*), for the appellant:

1. Admitting that the cause of the fall of the building was the negligent construction of the stone wall by Ammond Grow, and that he built it under an independent contract, yet if the defendants, Striebechers, knew or ought to have known that the stone-work was defective and insufficient, and nevertheless took it off the hands of Grow, and caused the superstructure to be placed thereon, they were also guilty of negligence, and could not shield themselves behind Grow: Chartiers V. Gas Co. v. Lynch, 118 Pa. 362. From the evidence, the jury would have been compelled to find that the stone wall was defective and insufficient to bear the weight of the brick wall to be put upon it; and what clearer evidence of acceptance of Grow's work by the Striebechers could there be, than the fact that they laid the joists and caused the brick work to be put thereon ?

2. Moreover, there was evidence that the defect in the stone wall was the fault of the defendants, Striebecher & Bro. All the testimony indicated that it was caused by the earth thrown back of the wall. It was conceded that the filling in was done by Striebechers' men. Albert Striebecher it is true, says Grow

commanded them, but that does not alter the case, for in this Grow was acting for the Striebechers, and not under his sub-contract. It is not claimed that it was any part of the stone-work contractor's business to make the excavation or to fill in. The general contractors are prima facie responsible for every-thing done in the construction of the building. Under the facts shown by the evidence they cannot shift the blame to Grow. The wall appears to have been all right, until their own men meddled with it and ruined it by throwing earth back of it.

3. Reference is made in the charge to the fact that the work was to be done under the supervision of an architect. This would not alter the duty of the contractor to use due care. The architect's supervision was merely to guard the interests of the owner, and could not relieve the contractors from re-sponsibility for their negligence: Erie City v. Caulkins, 85 Pa. 247; Edmundson v. Railroad Co., 111 Pa. 316; Reed v. Alle-gheny, 79 Pa. 300; Wray v. Evans, 80 Pa. 102; Chartiers V. Gas Co. v. Lynch, 118 Pa. 362; Robinson v. Webb, 11 Bush (Ky.) 464; Allen v. Willard, 57 Pa. 374; Homan v. Stanley, 66 Pa. 464. If this were otherwise, the only result in the case would be to transfer the liability from the Striebechers to the other defendants, whose agent the architect was, for it is not claimed that the architect was an independent contractor.

*Mr. John S. Ferguson* (with him *Mr. A. E. Weger*), for the appellees:

1. We do not claim, nor does the court below assert, that the mere fact that the architect approved the work and Grow said it could safely be done, would protect the Striebechers, and therefore we do not come in conflict with the cases cited by the appellant. But we do claim that the Striebechers were not negligent, simply because, relying upon the opinion of men competent to give one, whose good faith they had no reason to doubt, they did not require the wall to be torn down and rebuilt. Unless they knew, or ought to have known, that the wall after being straightened was unsafe for the purpose for which it was intended, they are not liable: Chartiers V. Gas Co. v. Lynch, 118 Pa. 362; Phila. etc. R. Co. v. Adams, 89 Pa. 31; 1 Addison on Torts, § 569.

2. There was no evidence to convict them of such knowledge,

and it would have been error to submit the question to the jury: Reading etc. R. Co. v. Ritchie, 102 Pa. 425. It would have been so, if there had been evidence amounting to no more than a mere scintilla: Howard Exp. Co. v. Wile, 64 Pa. 201; Cunningham v. Smith, 70 Pa. 450. The question raised as to throwing earth behind the wall is utterly irrelevant. Granting that it caused the wall to bulge, it was not in any sense the proximate cause of the injury: West. M. Tp. v. Watson, 116 Pa. 344; Pass. Ry. Co. v. Trich, 117 Pa. 390. The evidence, however, is that Grow, who was an independent contractor in his relations with the Striebechers, did the filling, using their men for his own convenience. That they were Striebechers' men is immaterial: Murray v. Currie, L. R. 6 C. P. 24.

OPINION, MR. JUSTICE GREEN:

In the case of Chartiers V. Gas Co. v. Lynch, 118 Pa. 362, we said: ".The case was thus made to turn upon the acceptance by the company of work so negligently and improperly done that the company knew, or ought to have known, that it was unsafe and positively dangerous. To such a submission there could be no possible objection, if there was any evidence from which the jury were warranted in finding that the work had been accepted by the company and taken off the hands of the contractor." In that case there was no question that the work had been done by an independent contractor, and that it was his negligence that caused the injury complained of. Had there been any evidence showing that the gas company had accepted the work of its contractor, with a knowledge of imperfections or defects which produced the plaintiff's injuries, the company would have been held liable, although the work was done by one who was clearly an independent contractor, having exclusive control of the work.

In the present case it was alleged, and there was ample evidence to sustain the allegation, that the stone wall on which the brick wall of the building was erected, was so defectively constructed that it caused the brick wall to fall and damage the plaintiff's building. The defendants Ebach were relieved of responsibility by their contract with the builders, Striebechers, and the builders claimed to be relieved by the application of the same doctrine to their sub-contract with Grow, the ma-

son who laid up the stone wall. That sub-contract is a very meagre one. It is all contained in the following words:

"M. Striebecher & Brother: I promise that I will do the mason and stone-cutting work for Mr. Ebach's house, according to plan and specifications, for the sum of four hundred and ninety-eight dollars, ($498.)          AMMOND GROW."

It may be gravely questioned whether this is such a sub-contract as takes away from the principal contractor the whole supervision and control of the mason and stone-cutting work, upon which a high brick wall was to be erected by the principal contractor, but as that question is not necessarily now before us, and has not been considered or argued, we express no opinion upon it. But on the question of the acceptance of the stone wall by the principal contractor, in such circumstances as that he must or may be presumed to have knowledge of its defects, we think there was sufficient testimony to submit it to the jury.                                                              o

The substance of the testimony was that the bulging of the stone wall, and forcing it back to its place, caused the brick wall to fall, or at least that it constituted such a defect in the stone wall as to make it quite unsafe to erect a brick wall on top of it. The bulging of the stone wall was attributed directly by different witnesses to the filling in of earth and stones behind it, followed by warm weather, which caused the mortar to soften, and thus bulge the wall out of position. Now, this filling in was no part of the work to be done by the mason, and in point of fact it was done by the Striebechers' men. This was testified to both by Grow and Striebecher, who were witnesses for the defendants, and was very clearly established. In addition to this, however, it was most distinctly proved that Striebecher knew all about the condition of the stone wall when he directed the laying of the joists and the erection of the brick wall. Grow, defendants' own witness, testified: "Mr. Striebecher came to me, and he says: 'There is a piece of wall that is crooked, and the architect wont allow me to lay the brick upon it, and what would we do about it?' I went down and stretched a line, and it was about twenty-five feet long and about two and one half feet high. This just went down to the cellar a little; and I told Striebecher—I says: 'Just wait a day or two, the weather will get soft again, and the wall will

come back again.' And so he says: 'Do you think it will?' I says: 'Yes.'" Albert Striebecher, one of the defendants, testified as follows: "Q. Your attention was called to this stone-work before you put the joist on, wasn't it? A. I seen it myself. Q. Your carpenters saw it before you came there? A. Not my carpenters; I seen it myself. Q. Didn't you go there because your carpenters stopped work on it? A. No, sir; I sent my men, and they did start the joist. I says: 'Better wait till I come back. I will see the architect before we put the joists down, if he is satisfied to put the wall on it.' . . . . Q. Didn't you tell Schuetzinger that wall would have to come down? A. If he couldn't get it straight, it will have to come down; couldn't leave it bulged, and build a house on it. Q. He did straighten the wall? A. Yes, sir. Q. What caused the wall to bulge out? A. Well, it was braced, and they went to work and filled in the wall with dirt in the back. Q. Filled in back of the wall with dirt? A. Yes, sir. Q. Who did that? A. Mr. Grow had two men of mine, two laboring men, and I left several, so they always could dig a little; might need it in the foundation; and so afterwards they filled in. Q. Those laboring men of yours filled in behind the wall? A. Yes, sir. Q. And that caused the wall to bulge out? A. Yes, sir. Q. Didn't that wall bulge out nearly the whole length of the wall, but more in the place where he braced it back? A. No, not all along. Q. How many feet of it bulged out? A. About twenty-five feet or so. Q. How much of it did he push back? A. He pushed it all back. Q. Pushed the whole twenty-five feet back? A. Yes, sir. Q. Did the braces extend along the whole twenty-five feet? A. Yes, sir; he had them braced, and after—You know it was winter-time. Q. And then he used crow-bars, didn't he? A. He braced it back; put the braces against it, and took the dirt out, and so it went back. I didn't stay there. Q. You knew it was being done? A. Yes, sir."

As a matter of course, this testimony proves conclusively that the Striebechers knew all about the condition of the wall; and, more than that, that they knew of and were satisfied with the measures that were taken to remedy the defect, approved of them,.and accepted the wall, and proceeded to lay the joists and erect the brick wall on top of it. Both Grow and Striebecher

thought the bracing of the wall was sufficient to restore it, and make it sufficient for the brick wall; but there were plenty of witnesses who thought otherwise, and so testified, and the question raised by this testimony was a pure question of fact for the exclusive consideration of the jury.

The question whether the Striebechers were liable for the injury done, was largely a question whether a responsibility which rested prima facie upon them was shifted over to others. The learned court below thought that it was conclusively shifted by the testimony, and therefore directed a verdict for the defendants. In this we think there was error, for the reasons we have stated. In the case of Allen v. Willard, 57 Pa. 374, there was a very similar situation. The principal contractors were sued as well as the owners. The injury was occasioned by one falling into an excavation in the sidewalk made for a building which was being erected. The owners were held not to be liable, as the builders were independent contractors, but they in turn sought to shift the reponsibility upon a sub-contractor who did the excavating. We held the evidence was not sufficient for that purpose, and that the principal contractor was liable. AGNEW, J., in delivering the opinion, said : " As to the excavation, Samuel Sloan testified, and this was all he said : 'I did the excavating for this building under a contract with Allen & Bros.; I did the whole of it.' Not a word was asked of these witnesses as to the terms of their contracts, or how they were to do the work, whether under the control and direction of the Allens or otherwise. The fact that each had a contract with the Allens for his particular work did not, in itself, separate the Allens from its supervision and control. To pay for stone-work by the perch, or to do the whole excavation under a contract, does not necessarily destroy the relation of master and servant. " In the case of Homan v. Stanley, 66 Pa. 464, which was also a case of injuries received from falling into an excavation for a cellar on a sidewalk, we said, READ, J.: " The owner is, undoubtedly, legally and morally liable for such negligence, unless he can shift the responsibility clearly upon some one else, and this is necessary for the safety of our fellow-citizens, particularly in populous places. In the present case he has not shifted the responsibility, and he is therefore liable." In this case, the plaintiff, without any fault of his, has sustained serious damage

Syllabus.

by the falling of the wall of a building in course of erection. The owner successfully escapes liability on the ground that the work was being done by an independent contractor. That contractor, who undoubtedly erected the wall that fell, seeks also to escape liability by shifting it over upon some one else who he claims was a sub-contractor. But, as we have seen, he accepted the work of that sub-contractor, knowing well its condition; and it is alleged, and much proof was given on the trial tending to show, that the work thus accepted was so defectively done as that it caused the injury complained of. In addition to that, the defendant contractor's own men did the work which, it is also alleged, caused the defect in the wall erected by the sub-contractor. Upon both of these allegations we think there was ample evidence to take the case to the jury on the question of the liability of the principal contractor. The assignments of error are all sustained.

Judgment reversed, and venire de novo awarded.