# THE LANCASTER AVENUE IMPROVEMENT CO. v. JOHN RHOADS.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued April 18, 1887—Decided May 16, 1887.

1. When certain powers and privileges have been specially conferred by the public upon an individual or corporation for private emolument, in consideration of which certain duties affecting the public health or the safety of public travel have been expressly assumed, the individual or corporation in the receipt of the emolument cannot be relieved from liability by committing the performance of these duties to another.

2. The rule that, in actions for negligence, municipal corporations may in certain cases cast the responsibility upon an independent contractor whose negligence caused the injury, has never been extended to corporations for profit.

3. An incorporated turnpike company undertaking to lower the grade of its road while in the receipt of tolls and the road open for travelers, is bound to guard that part retained for public use, to warn travelers of danger threatened by obstructions, and by suitable devices to direct them in the proper route; of these duties they may not divest themselves by shifting the responsibilities upon others.

4. Painter v. Pittsburgh, 46 Penn. St. 213; Reed v. Allegheny, 79 Idem 300; Erie v. Caulkins, 85 Idem 247, distinguished: Penn. & Ohio Canal Co. v. Graham, 63 Penn. St. 290, explained.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 119 January Term 1886, Supt. Ct.; court below, No. 64 June Term 1883, C. P.

This was an action in case for negligence by John Rhoads against The Lancaster Avenue Improvement Company, to recover damages for injuries received by the plantiff. The defendant company was reducing the grade of its turnpike road at one point and had employed, by a verbal contract, B. M. and J. F. Shandley to do the work of grading and reconstruction for certain prices per cubic yard of grading and per cubic yard of stone. The road on one side had been graded

down, the other side remaining open for travel. Tolls were collected from travelers. The plantiff, driving a load of hay at night too near the embankment, was thrown over and injured. The material facts are fully stated in the opinion.

On the trial before B. MARKLEY BOYER, P. J., the defendant company submitted certain points which, with their answers, were as follows :

1. The defendants, having by contract given to Messrs. B. M. and J. F. Shandley, the work of grading and constructing the turnpike at the point where the accident occurred, and the said accident having occurred during the progress of the work, are not responsible to the plaintiff for any injury he may have sustained through the negligence of the contractors or any of their agents or servants, and your verdict must therefore be for the defendants.

Answer : This is true, unless the injury resulted from the negligence of the defendants in trusting to the contractors or their employees duties which devolve upon the defendants themselves. [1]

2. If the jury believe from the evidence that the defendants contracted with another person to perform the work of altering the grade of the turnpike at the point where the accident occurred, and had intrusted to said contractor the sole charge and management of the work, they are not liable for any injuries the plaintiff may have sustained by reason of any negligence upon the part of the contractor or of his agents or employees.

Answer: We decline to affirm this point as it stands, for the defendants could not delegate to a contractor all the responsibilities which devolved upon them by their charter, as trustees, for the public traveling upon their road. They could not lawfully create dangerous nuisances in their highway, or knowingly permit them to be maintained by others. [2]

3. That the engineer, employed by the defendants, exercised a supervision over the work while it was in progress, does not make the defendants responsible if you find the facts to be as stated in the second point.

Answer : The employment of an engineer by the defendants, as stated, makes the defendants neither more nor less responsible. They are answerable in either case for the consequences of their own negligence or the negligence of their agents. [3]

9. Under all the evidence in this case your verdict must be for the defendants.

Answer: We decline to affirm this point.[4] ·

Under the charge of the court and the answers to said points, to which the defendant excepted, the jury found a verdict for the plaintiff for $1,525. A motion for a new trial being refused (reported in 17 W. N. 125), the defendant took this writ, assigning for error:

1. The answer to defendant's point.[1]
2. The answer to defendant's point.[2]
3. The answer to defendant's point.[3]
4. The answer to defendant's point.[4]

*Mr. Neville D. Tyson* and *Mr. John B. Thayer*, for the plaintiff in error:

1. The general principle to be extracted from the cases is, that a person, either natural or artificial, is not liable for the acts or negligence of another, unless the relation of master and servant or principal and agent exists between them; that when an injury is done by a party exercising an independent employment, the party employing him is not responsible to the person injured: Painter v. Pittsburgh, 46 Penn. St. 221; Erie v. Caulkins, 85 Idem 247; Reed v. Allegheny, 79 Idem 300. The rule is not confined to this state: Blake v. Ferris, 5 N. Y. 48 (55 Amer. Dec. 304); Pack v. Mayor &c., 4 Seld. 222; Kelly v. Mayor, 1 Kern. 432; Barry v. St. Louis, 17 Mo. 121. It has been applied in this state to a school district: Erie School District v. Fuess, 98 Penn. St. 600. The rule was invoked by a township, and it was intimated that had the accident occurred in the progress of the work, while the contractor had exclusive control, it would have been in point: Mahanoy Township v. Scholly, 84 Penn. St. 136.

2. The rule is applicable to private corporations: Ardesco Oil Co. v. Gilson, 63 Penn. St. 146; Mansfield Coal Company v. McEnery, 91 Idem 185; Hunt v. Penn. R. Co., 51 Idem 475; Thibetts v. Railroad Co., 62 Me. 391; Schular v. Railroad Co., 38 Barb. 653; Penn. & O. Canal Co. v. Graham, 63 Penn. St. 290.

3. The measure of responsibility of a turnpike company is no greater than that of any of the other corporations in the

cases cited: Townsend v. Turnpike Co., 6 Johns. 90; Wilson
v. Turnpike Co., 21 Barb. 68.

*Mr. Henry Pleasants, Jr.*, and *Mr. Aaron S. Swartz* (with
them *Mr. Samuel Hinds Thomas*), for the defendant in error:

1. The defendant company, being a private corporation
vested with the privilege of charging tolls, should take its
privileges *cum onere;* and although it might legitimately em-
ploy a contractor, it should not thereby relieve itself from
responsibility to keep the road in good order, unless it was, at
least at the time, divested of its right to receive tolls.    This
is the pinch of the case, and in support of this view there are
numerous authorities: Wood M. & S., 621, 624; MacDonell
M. & S. 265; Detroit v. Corey, 9 Mich. 165 (80 Amer. Dec.
78); Water Co. v. Ware, 16 Wall. 566; Hole v. Railroad Co.,
6 H. & N. (Exch.) 488; Mayor of N. Y. v. Furza, 3 Hill 612.

2. The principle which distinguishes this case from the
usual cases of independent contractor, is shown in West v.
Railroad Co., 63 Ill. 545; Vermont Cent. R. Co. v. Baxter,
22 Vt. 365; Veazie v. Railroad Co., 49 Me. 119; York & Md.
R. Co. v. Winams, 17 How. 30; Hilliard v. Richardson, 3 Gray
349 (63 Amer. Dec. 743); Abbot v. Railroad Co., 80 N. Y. 27;
Ohio & Miss. R. Co. v. Dunbar, 20 Ill. 623 (71 Amer. Dec.
291); Langley v. Railroad Co., 10 Gray, 103; Stewart's App.,
56 Penn. St. 423; Pittsb. & C. R. Co. v. Railroad Co., 81*
Idem 111; Mahanoy Township v. Scholly, 84 Idem 136; Sus-
quehanna. Depot v. Simmons, 112 Idem 384.    The *dictum* in
Penn. & O. Canal Co. v. Graham, 63 Penn. St. 290 is inap-
plicable.

3. But as a matter of fact the Shandleys were not in control
of the road at the point of the injury as "independent con-
tractors."    The case resembles Homan v. Stanley, 66 Penn.
St. 466; Washington N. Gas Co. v. Wilkinson, 1 Cent. R. 637.

OPINION, MR. JUSTICE CLARK:

The Lancaster Avenue Improvement Company is a private
corporation, created in the year 1880, for the purpose of con-
structing and maintaining a turnpike road from Fifty-second
street, in the city of Philadelphia, through the counties of
Montgomery, Chester and Delaware, to a point one half mile

west of the 18th mile-stone on the old Lancaster road, a distance of some fifteen miles. The turnpike was opened for travel sometime in the fall of 1882, and the company was after that in the receipt of tolls under its charter.

About two weeks after the turnpike was completed, the company undertook to let down the grade of the road at Wayne for a distance of some five hundred feet. The cutting at the point of highest elevation was about six feet deep, and ran out to grading points about two hundred and fifty feet distant, east and west. Mr. Henry W. Dunne, the superintendent, under authority from Mr. Cassatt, the president of the company, made a contract with B. M. Shandley for the performance of the work, Shandley to receive twenty-five cents per cubic yard for the grading, and ninety cents per square yard for the stone-work. The contractor was to furnish all the labor, take charge of the work and perform his contract in a good and workmanlike manner; he agreed also to provide a safe passage-way for the public, and to indemnify the company against loss arising from the negligent performance of his contract; he gave no bond, nor was the contract reduced to writing.

The centre line of the road having been ascertained by the superintendent, and the extent and depth of the excavation indicated on the ground by stakes set by an engineer, the contractor proceeded with the work. In order that the public travel on the turnpike might not be impeded or rendered unsafe, a passage-way was left on the north side of the road until the excavation should be made, and the stone put in place on the south side, when it was proposed to divert the travel into the cut on the south side, until the whole work was completed.

It was at this stage of the work, when the travel had just been turned into the cut on the 12th December, 1882, that the plaintiff's injury was received. He was hauling hay from his home to Philadelphia. Starting about three o'clock in the morning, he entered the turnpike at the Eagle; when he came to this excavation, he found no barriers erected, no light burning to direct his course or to warn him of danger. The night was sufficiently dark to render objects on the road indistinct, and his horses took a route so close to the bank on the north side of the excavation, that his wagon, loaded with hay, was

upset, and he was thrown off into the road, and thus received the injuries complained of. The bank which caused the injury was near the centre of the turnpike, and it is alleged and the jury has found, that there was nothing whatever to warn him of the existence of the obstruction.

In the absence of all precautions against danger, the plaintiff, in the night time, might well assume that the centre of the road was the usually traveled route, that it was in proper condition of repair, and that he could pass safely upon it. It is clear, under the verdict, that it was owing to somebody's negligence that the injury occurred.

The defendant's contention, however, is that it was the negligence of Shandley which caused the injury; that Shandley had contracted to perform the work, and had entire control of it; that he was at the time exercising an independent employment, and was alone responsible for the negligence complained of. The general principle is undoubted, that when a contractor takes entire control of a work, the employer having no right of supervision or of interference, the employer, if he is not negligent in his selection, is not liable to third parties for the contractor's want of care in the performance of it. This rule is applicable not only to individuals—Allen v. Williard, 57 Penn. St. 374—but to private corporations: Ardesco Oil Co. v. Gilson, 63 Penn. St. 146; Edmunson v. Pittsburgh etc. R. R. Co., 111 Penn. St. 316; and also in Pennsylvania, to municipal corporations: Painter v. Pittsburgh, 46 Penn. St. 213; Borough Susquehanna Depot v. Simmons, 112 Penn. St. 384. But when certain powers and privileges have been specially conferred by the public upon an individual or corporation for private emolument, in consideration of which certain duties affecting the public health or the safety of public travel have been expressly assumed, the individual in receipt of the emoluments cannot be relieved of liability by committing the performance of these duties to another. In such cases liability cannot be evaded, by showing that the injury resulted from the fault or neglect of a third person employed to perform these public duties: Wood on Master and Servant, 621, 624.

In Pennsylvania, municipal corporations, although invested with public privileges, and charged incidentally with correspondent public duties and obligations, may in certain cases

cast the responsibility upon an independent contractor, whose negligence caused the injury · Painter v. Pittsburgh, 46 Penn St. 213; Reed v. Allegheny County, 78 Penn. St. 300; City of Erie v. Caulkins, 85 Penn. St. 247 · but this is because they are municipal and public corporations. The rule has never been extended, here or elsewhere, to private corporations of the class we have referred to. The maintenance and repair of roads and streets is merely a burden imposed upon a municipality, whilst a corporation created for the purpose is compensated by tolls. " There is certainly a very important distinction," says C. J. REDFIELD in Davis v. Lamoille Plank Road Co., 27 Vt. 602, " between the liability of towns for damages accruing to travelers by reason of defects in the highways within their limits, and that of turnpike and other corporations, who derive a revenue from the use of their roads by travelers. In the former case, the support of the road is a mere burden upon the towns, without any corresponding equivalent. The traveler pays no consideration for the use of the road. It is no advantage to the towns to have the roads used by travelers, so that in this case there is, properly speaking, no privity, by way of a *quasi* contract, between the traveler and the town. . . . . . But in the case of corporations created for the purpose of maintaining a road for their own advantage, to be compensated by means of tolls, collectible of all who use the road, the case is very different. In such cases the liability to pay tolls is a consideration for the undertaking on the part of the corporation to furnish a safe road for the use of the traveler as an equivalent. It is the same in principle as any other case where service is performed for pay. There is an implied undertaking, resulting from the general rules of law applicable to similar subjects, that the person undertaking such service, whether it be a natural or artificial person, shall perform it faithfully, and, in case of failure, shall respond to the party thus paying his money, by way of damages, as an equivalent. Indeed, the liability of such corporations as the defendants is more analogous to that of a railroad which undertakes to carry for fare, which is but another name for toll, than to the liability of towns. And it was never doubted that railroads are liable for all damages accruing to travelers by reason of defects in their road or in its management."

A rule less stringent applies to public than to private corporations: School District of Erie v. Fuess, 98 Penn. St. 606. No case in Pennsylvania has been cited which covers the precise point in question, nor has any case been brought to our notice which is in conflict with the rule as we have stated it. In Penn. & O. Canal Co. v. Graham, 63 Penn. St. 290, the nature and extent of the company's liability was expressly defined by the statute, and hence the case is not applicable here to the full extent of what was there ruled, but it recognizes the general principle that where special privileges have been granted by the legislature, the duties imposed as the price of those privileges are imperative and must be performed. Mr. Justice SHARSWOOD, delivering the opinion of the court, says: "The principle of Painter v. The Mayor of Pittsburgh, 46 Penn. St. 213, has no application. That was an action for an injury sustained by the plaintiff from the negligence of the contractors of the defendants while engaged in the actual construction of a sewer. Had the plaintiff in this case fallen into the canal in consequence of the negligence of the contractors employed by the defendants while actually employed either in the construction or repair of this bridge, the case presented would have been entirely different." From this *dictum* an inference is sought to be drawn that in the "repair" of the bridge the company would have been relieved of responsibility for the negligence of a contractor; but as the words "construction or repair" are used together, it is more reasonable to suppose that the learned justice intended such repairs as were made when the bridge was closed for the purpose from the public travel.

The defendant company, by the terms of its charter, was invested with special public privileges, that of "constructing and maintaining a turnpike road" for the private gain of the company; the road had been completed and was open to public travel, and the company had for several weeks been in the regular receipt of tolls. In consideration of the right to collect such tolls, the proprietors of the road undertook to exercise due care and diligence in keeping the road in such repair that it might be traveled with safety to life and property.

Having undertaken to lower the grade whilst the road was open to travelers, it was the plain duty of the defendants to

guard that part which they retained for public use · it was their duty to warn travelers of any danger that threatened by reason of obstructions in the road, and by suitable devices to direct them in the proper route; and of these duties, attaching to them as trustees for the public, they could not divest themselves by shifting the responsibility upon others. If the road had been in process of construction, or had been closed for repairs, a different case would of course be presented.

The plaintiff, it is true, is not shown to have paid any toll, but he was liable to the regulations and requirements of the company; he was not obliged to pay until he reached a point on the road where the tolls were demandable. He was not a trespasser; he was traveling the turnpike under the general invitation extended to the public, and was entitled to the protection which the law secured to· the public; he was not required to pay in advance; he complied with the rules of the company by paying when and as the company required; the toll was demandable, and that was sufficient.

In this view of the case, it is wholly unnecessary for us to consider the evidence as to the relation subsisting between the company and Shandley in the performance of this work. As to the traveling public, Shandley must be regarded as the agent or servant of the company only, and not as a contractor engaged in an independent employment. Upon a careful examination of the whole case, the

Judgment is affirmed.