## Buckwalter, Appellants, *v.* Lancaster and Lititz Turnpike Road Co.

*Turnpike companies—Street railway—Occupancy of road by railway—Liability to landowners.*

Where a street railway company organized under the General Street Railway Act of May 14, 1889, P. L. 211, locates its right of way over a turnpike road in pursuance of the power conferred upon it by the act and without the consent of the turnpike company, and as a part of the compensation to be paid for the use of the road agrees to keep in proper repair the entire roadway of the turnpike company, and to assume the responsibilities of the latter in relation thereto, the turnpike company thereafter, cannot be held liable for damages to abutting property because pipes or culverts laid by the railway company were not provided of sufficient size to carry off water from the abutting land across or under the roadbed. The railway company will be alone liable for such damages.

Argued November 10, 1914. Appeal, No. 21, October T., 1914, by plaintiffs, from judgment of C. P. Lancaster Co., September T., 1912, No. 7, on verdict for defendants in case of Daniel Buckwalter and H. S. Over v. The President and Managers of the Lancaster and Lititz Turnpike Road Company. Before RICE, P. J., ORLADY, HEAD and KEPHART, JJ. Affirmed.

Trespass to recover damages for injuries to land. Before LANDIS, P. J.

At the trial the court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*B. F. Davis,* for appellant, cited: Lancaster Ave. Improvement Co. v. Rhoads, 116 Pa. 377; Penna., Etc., Canal Co. v. Graham, 63 Pa. 290; Chestnut Hill, Etc., Turnpike Road Co. v. Piper, 77 Pa. 432.

*S. R. Zimmerman,* with him *W. U. Hensel,* for appellee, cited: Pinkerton v. Penna. Traction Co., 193 Pa. 231; Minnich v. Lancaster, Etc., Electric Ry. Co., 203 Pa. 632.

OPINION BY HEAD, J., July 21, 1915:

The plaintiffs' declaration sounds in tort. The injury complained of was damage to a tobacco crop on the lands of the plaintiffs which was partially destroyed by water in the summer of 1911. The responsible cause of the injury is alleged to have been a failure on the part of the defendant turnpike company to provide pipes or culverts of sufficient size to promptly carry off the water, from the land of the plaintiffs, across or under the roadbed.

It appears from the evidence that the plaintiffs' land lies below the surface of the turnpike, even as it was before the construction of the street railway hereafter to be referred to. The tract of land so situate further appears to have been naturally subjected to the surplus rainfall of a watershed comprising about 400 acres. The nature of the obligation on the part of the turnpike company, if any such obligation existed, to provide a vent for such surplus water does not appear, but the

record indicates that the case was tried as if some such obligation at one time existed.

The Lancaster & Lititz Electric Railway Company was a corporation organized under the General Street Railway Act of May 14, 1889. Section 17 of that act declares, "Any passenger railway company incorporated under this act shall have power......to ascertain and define such route as they may deem expedient, over, upon and along any turnpike......, and thereupon ......to lay down, construct and establish a track or tracks for its use in the transaction of its business...... Provided, That before such passenger railway company shall enter upon and use any such turnpike in the laying of tracks and the use of the same, it shall make compensation to the owner or owners thereof for such occupation and use in the mode provided in section 14 hereof." The section last named clearly authorizes the turnpike company and the street railway company to agree, if possible, on the compensation to be paid by the railway company, and only in case of a failure to so agree is the Court of Common Pleas authorized to appoint viewers to fix and determine the compensation.

The undisputed evidence in the case before us is that the railway company, in the exercise of its statutory right, fixed its route along and upon the turnpike of the present defendant company. Thereafter the two companies, in the further exercise of the right and power conferred upon each of them by the statute, undertook to agree and did agree upon the nature of the compensation to be paid by the street railway company. That agreement was reduced to writing in August, 1894, and constitutes what is called the lease in the present case. The railway company duly entered upon the turnpike and constructed its tracks theron, and either that company or its lawful successor has since been operating the same. As a part of the compensation to be paid by the railway company, it undertook to keep in proper repair the entire roadway of the turnpike company and to

assume the responsibilities of the latter in relation thereto.

The testimony discloses that in the years gone by a number of surface water breaks had been constructed along the highway to gather and discharge the water flowing thereon, but that some years before the injury here complained of some automobile association had succeeded in "compelling" the removal of these water breaks. The nature of that compulsion the record does not disclose.

By various proceedings, not necessary to be here detailed, the property rights and franchises of the Lancaster & Lititz Electric Railway Company became vested in the Conestoga Traction Company as long ago as the year 1900, and that company from that time to the present has been exercising the rights and discharging the obligations which had their origin in the agreement of 1894 already referred to.

At different dates prior to the injury here complained of, the railway company had provided first a twelve-inch pipe and later an additional eighteen-inch pipe at or about the point necessary to relieve the land of the plaintiffs from surplus flood water. As already stated, the plaintiffs allege that these pipes were insufficient in size, and further that they were suffered to become clogged and obstructed. To recover the damages sustained they brought this action, not against the traction company, which owned and operated the street railway along the turnpike, and which under the agreement or lease referred to had charge of the entire turnpike road, but against the turnpike company which, since 1894, has exercised no control as to the manner in which the railway company should perform its obligation to keep the roadbed in repair and discharge such responsibilities incidental thereto as might otherwise rest upon the turnpike company. This state of facts having been made to appear by the uncontradicted evidence, the learned trial

judge directed a verdict in favor of the turnpike company and the plaintiffs appeal.

The contention urged upon us by the able counsel for the appellants may be briefly stated in the following quotation from the case of Lancaster Ave. Improvement Company v. Rhoads, 116 Pa. 377: "When certain powers and privileges have been specially conferred by the public upon an individual or corporation for private emolument, in consideration of which certain duties affecting the public health or the safety of public travel have been expressly assumed, the individual in receipt of the emoluments cannot be relieved of liability by committing the performance of these duties to another." Conceding, as we must, the soundness of the general proposition stated, it does not establish the liability of the defendant in the present case. As we have already indicated, the plaintiffs' evidence does not disclose that, by reason of the grant of a turnpike franchise, the defendant company became saddled with the obligation to supply a vent to relieve the land of the plaintiffs of the surplus water that fell or flowed upon it by reason of its natural location. But assuming there was such obligation, the facts here existing carry the present case outside the lines of the general principle referred to for this reason: In the case cited, as the language we have quoted shows, the court was dealing with a situation where the corporation, by its own voluntary act and without any legal right, undertook, by its own contract, to relieve itself of obligations imposed upon it by law. To apply that doctrine to the present case would be to exclude wholly from our consideration the situation resulting from the Act of 1889. The street railway company was lawfully incorporated and was given the statutory right to locate and construct its tracks upon the turnpike of the defendant company without the consent and against the will of that company. In making its location it was authorized by the legislative will to construct its lines for its own advantage. Having fixed its loca-

tion upon the turnpike of the defendant company, the law then authorized both parties to agree if possible on the compensation that should follow such location of the railway and its subsequent use. But the appellant urges that although this be true, the turnpike company could not, as a part of such compensation, impose upon the railway company the obligation to take care of any more of the turnpike road than the portion covered by its own tracks, and that the attempt to do so was an act ultra vires.

The answer to this argument is twofold. It is not by any means clear, from the evidence before us, that the turnpike company did exceed its power or step outside the limits contemplated by the Act of 1889 in making the agreement referred to. It is plain enough that the railway company would have the right to construct its tracks at such grades and in such manner as would best serve its own purposes; and an agreement between the two companies that it should take care of and be responsible for any injuries resulting from the construction and operation of its road could hardly be questioned. This being the result of the provisions of the act of assembly, it is not easy to see that the public right and convenience would not be better subserved by having the control of the entire roadway and the responsibility for its condition vested solely in one of the parties than concurrently in both. Such a condition would result in divided responsibility and lead to much uncertainty and confusion. If, however, it should become necessary to determine whether or not, in making the agreement aforesaid, the turnpike company had attempted an act in violation of its charter obligations, we do not think such question could be properly raised or determined in this collateral action of trespass.

The evidence demonstrating that the acts complained of were the acts of the traction company and not of the turnpike company, can the latter be held responsible for damages in this action of trespass? We have en-

deavored to show that the railway company was lawfully located on the bed of the turnpike and that such location resulted from the exercise of its own statutory rights and was in no sense the voluntary act of the defendant company.  It is also true that the turnpike company was authorized by the same statute to enter into an agreement fixing the nature and extent of the compensation to be paid by the railway company for its occupation and use of the highway.  Such compensation as the railway company might lawfully give, the turnpike company ought to be, by force of the statute, authorized to receive.  In Pinkerton v. Penna. Traction Co., 193 Pa. 229, Mr. Justice MITCHELL said: "Nor is there any weight in the objection that the passenger railway had no power to lease its road.  The power to take a lease is expressly given to the motor companies, and the corresponding power in the passenger railway companies as owners to give a lease is necessarily implied.  Without it the grant in the act would be nugatory."  Later on in the same opinion the learned justice says: "The last point made by appellant is that even if the Pennsylvania Traction Company was incorporated the lease to it by the Columbia and Donegal Railway did not exonerate the latter from liability.  But such a proposition is contrary to all the established rules of law in regard to lessor or lessee.  The latter steps into the place of the former, is substituted for him, and assumes all subsequent liabilities incurred in the operation of the property leased."  If then the railway company was authorized by law to enter upon and take over the control of a considerable portion of the defendant's company's highway; if it was required by the statute conferring the right to agree if possible with the turnpike company upon the compensation to be rendered for such occupation and use, it ought to necessarily follow that the turnpike company, on its part, was fully authorized by the same statute to exact and receive compensation, of the nature and to the extent that would as far as pos-

sible remunerate it and at the same time conserve the rights of the public in the unoccupied portion of the highway. So in Minnich v. Lancaster, Etc., Electric Railway Co., 203 Pa. 632, the plaintiff sought to join in one action of tort a railway company, originally authorized to construct a certain line of railway, a traction company which had succeeded to the rights of the railway company, and a construction company which had undertaken, for the traction company, the actual building of the line of railway. The acts complained of by the plaintiff had been done either by the traction company or its contractor, the construction company. Nothing had been done by the lessor railway company. Mr. Justice FELL, in his opinion, said: "The learned judge was of opinion, and we think rightly, that nothing had been shown to make the railway company responsible. It had lawfully procured and lawfully leased its franchises, and it was not liable for the failure of its lessee to obtain the consent of the plaintiff to the location of the road in front of his farms."

Applying the reasoning of the cases just cited to the facts as they appear in this record, we are of opinion the plaintiffs' case failed to show that the defendant sued was responsible for the acts or omissions causing the damage complained of. The learned judge below was therefore right in directing a verdict for the defendant and the judgment entered thereon should not be disturbed.

Judgment affirmed.