Opinion by
 

 Parker, J.,
 

 The plaintiffs, owners of a building at No. 451 South Sherman Street, Wilkes-Barre, Pennsylvania, brought this action in trespass against Glen Alden Coal Company to recover compensation for damages to the real
 
 *311
 
 estate of plaintiffs caused by an explosion of dynamite used in connection with the drilling of a bore hole in the public street on which the land abutted. It was alleged by plaintiffs that the coal company was actually conducting the drilling operations. The coal company set up a defense, the burden of which was that the drilling and shooting were done by Sprague & Henwood, Inc., an independent contractor. On trial the jury was instructed that if the drilling and shooting were done by Sprague & Henwood, Inc., working as an independent contractor, the plaintiffs were not entitled to recover from the defendant. As the jury found for the plaintiffs, we must assume that they found that the drilling and shooting were not done by Sprague & Henwood, Inc., as an independent contractor. The coal company, the appellant, complains of the refusal of its motion for judgment n. o. v., and in support thereof urges that the evidence so clearly established the fact that Sprague & Henwood, Inc., was an independent contractor that the verdict should not be allowed to stand. The plaintiffs not only insist that it was for the jury to determine whether Sprague & Henwood, Inc., was an independent contractor and that the finding of the jury was conclusive as' to that fact, but also urge that even if Sprague & Henwood, Inc., was an independent contractor the coal company was still liable. We are of the opinion that the court below properly refused the motion for judgment n. o. v., but are not in entire accord with the reasoning of the court below or that of the appellees. We believe that, under the circumstances here present, the coal company was not relieved from liability even though Sprague & Henwood, Inc., might be classed as a so-called independent contractor.
 

 If the only issue presented on this appeal had been whether Sprague & Henwood, Inc., was an independent contractor, and if that issue were controlling, we would have been constrained to hold that the coal company
 
 *312
 
 was at least entitled to a new trial. However, under our view of the law applicable to the question it is not essential that we should so hold, and we will therefore assume for the sake of argument that the drilling and shooting were actually performed by Sprague & Hen-wood, Inc.
 

 The coal company was the owner of a considerable acreage of strata of mined and unmined coal lying under the city of Wilkes-Barre and was interested in knowing the condition of the roof above the seam of coal that it might know the effect upon the surface of the removal of the coal. It made application to the city for permission to drill certain “diamond drill holes” on city streets and the city granted permission so to do by resolution as follows: “November 18, 1930. Be it resolved by the City Council of the City of Wilkes-Barre: That the Glen Alden Coal Company be and they are hereby granted permission to drill seventeen diamond drill holes, 2 inches in diameter at the following locations, as shown on the attached blue print:......This permission is granted with the understanding that the Glen Alden Coal Company shall file with the City Engineer a cross section of each of said drill holes and shall be liable for all damages to persons and property during the time said drill holes are being put down; also save the City harmless from any and all suits and claims whatsoever.” The maps or plans attached showed the precise locations at which the holes would be drilled, and the evidence disclosed that the coal company had done considerable drilling of test holes. In fact, it appeared that such operations were a regular routine in its business.
 

 The coal company employed Sprague & Henwood, Inc., to bore the holes. On April 9, 1931, pursuant to a contract which was in .writing, Sprague & Henwood, Inc., moved its equipment to South Sherman Street at a location, within eight feet of plaintiffs’ building and
 
 *313
 
 started drilling. When the drill had penetrated forty-seven feet a boulder was encountered which made it necessary to use dynamite in the hole. It was shown that in fifty per cent of all the holes drilled in that section it was necessary in the drilling operations tío use dynamite for the purpose of blasting certain rocks that were encountered and in order that the drilling might continue. The driller then inserted five sticks of sixty per cent dynamite eight inches long and three-quarters of an inch in diameter in the hole at a point forty-seven feet from the surface and discharged, or fired, the explosive. Vibrations were set up with a resulting damage to plaintiffs’ premises.
 

 The appellees suggest two reasons why the coal company could not hide behind the independent contractor, Sprague & Henwood, Inc.; viz., (a) that the work to be done was inherently dangerous, and (b) that the work to be done was by virtue of a public authority for purposes not having to do with the ordinary use of public roads or streets and the doing of the work involved a risk of injury to the users of the public streets and adjacent property.
 

 We pause here to consider the pleadings. The tort charged was averred only in most general language, the averment being that the coal company “drilled a large hole or opening and therein intentionally, wilfully, negligently and without reasonable care, set off a huge quantity of dynamite, or other high explosives, causing numerous severe and loud explosions and concussions,” and thereby caused direct damage to plaintiffs’ abutting real estate. There was not at the trial any direct evidence of negligence in the manner of using the dynamite or, generally speaking, that there was lack of reasonable care in such use. There was not any allegation or specific evidence that the use of dynamite under the circumstances constituted a nuisance. (See
 
 Forster v. Rogers Bros.,
 
 247 Pa. 54, 93 A. 26.) In fact, the
 
 *314
 
 cause was submitted to the jury to determine whether a direct trespass, trespass vi et armis, had been proved. “The general rule in cases of the explosion of dynamite, where third parties having no relation to the person having it in possession are injured, is that the highest degree of care must be exercised...... [There is a] duty which rests upon one, conducting blasting operations upon his own property, to do so in such a manner as not to injure others, in person or property. If he inflicts such injury, it is a trespass for which he may be held responsible even if not shown to be negligent:”
 
 Rafferty v.
 
 Davis, 260 Pa. 563, 566, 567, 103 A. 951. If the defendant so conducted its work of blasting upon the street as to immediately injure adjoining property, this amounted to a direct trespass upon the premises injured for which the liability of the actor was absolute and for which it is bound to respond in damages without regard to the question of negligence:
 
 Mulchanock v. Whitehall C. Mfg. Co.,
 
 253 Pa. 262, 264, 98 A. 554.
 

 As to work done by independent contractors, the general rule is thus stated in Restatement, Torts §409: “Except as stated in §§410 to 429, the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants.” It is likewise settled in Pennsylvania that a person is not liable for the acts of negligence of another unless the relation of master and servant, or principal and agent, exists between them, and that ordinarily when an injury is done by a person exercising an independent employment the party employing him is not responsible:
 
 Fuller v. Palazzolo,
 
 329 Pa. 93, 197 A. 225. There are exceptions recognized to this rule but we will confine our attention for the present to the exceptions relied upon by the appellees.
 

 (1) We will first consider the exception sometimes made which deals with inherently dangerous agencies.
 
 *315
 
 Appellees cite and rely upon the rule as stated in Restatement, Torts §427, as follows: “One who employs an independent contractor to do work which is inherently dangerous to others is subject to liability for bodily harm caused to them by the contractor’s failure to exercise reasonable care to prevent harm resulting from the dangerous character of the work.” If this principle, as broadly stated in the Restatement, were the law in Pennsylvania, the controversy would be solved. While the statement of the law as contained in the Restatement is in harmony with the decisions of the courts of many jurisdictions, “it is not supported by any decision of our Supreme Court, or this court, which the industry of counsel or our own examination has discovered”:
 
 Silveus v. Grossman,
 
 102 Pa. Superior Ct. 365, 369, 156 A. 716. That case was appealed to the Supreme Court (307 Pa. 272, 161 A. 362) and in an opinion by Mr. Justice Maxey this court was affirmed. It is the contention of the appellant that that opinion is a complete repudiation of the principle as adopted in other jurisdictions, and as there is a careful discussion of the principles as applicable to the facts there presented it must have our careful consideration.
 

 In the Silveus case a fire almost completely destroyed defendant’s building through no fault oij the owner. Brick walls were left standing and the municipal authorities notified him to remove the menacing walls within twenty-four hours. Defendant straightway employed an independent contractor to take down these walls. In doing so the independent contractor, Kimbal, attached a cable to the wall to pull it over and the wall fell on plaintiff’s property causing considerable damage. “This manner of performance indicated want of care on Kimbal’s part” (307 Pa. 272, 274). The defendant was held not liable. Mr. Justice Maxey pointed out in that case the impossibility of finding a formula the application of which would determine what work is
 
 *316
 
 “inherently dangerous,” and gave a number of logical and convincing reasons why the defendant in that case was not liable. The decision is positive authority binding on us to the effect that merely because a work is inherently dangerous does not of itself furnish sufficient ground for holding that the employer of the independent contractor is liable for damages caused by the negligence of such independent contractor. That case does not hold that there may not be circumstances where the employer of the independent contractor is liable. In fact the contrary is implied when it was stated (p. 277) that should the doctrine be “generally” adopted serious consequences would follow. The same justice, in
 
 Fuller v. Palazzolo,
 
 supra (p. 110), said: “It is true that there are cases where the owner is liable for the negligence of the independent contractor.”
 

 In this connection we will again refer to the facts disclosed by the record. The maps submitted to the city in connection with the application for permission to drill the holes in the city streets showed the location of each proposed hole. The coal company and not Sprague & Henwood, Inc., fixed such locations and the hole in question was placed within eight feet of plaintiffs’ building. The company knew, or ought to have known, that in drilling holes in that section it was part of the regular routine of such operation to explode dynamite to shatter boulders that were encountered by the drill. The correspondence between the defendant and Sprague & Henwood, Inc., showed that the defendant was engaged in extensive drilling operations. The defendant, as part of its own proofs, showed that in fifty per cent of the holes! drilled there dynamite was a necessary part of the operation and was so used. These were shallow holes only extending to the coal seam, and in this particular hole only penetrated the earth sixty-four feet six inches and the dynamite was fired at forty-seven feet. The coal company therefore contracted with
 
 *317
 
 Sprague & Kenwood, Inc., knowing where the hole was to be drilled and that dynamite would be fired. It also appeared that the coal company’s agents were on the ground from time to time observing the progress of the work. When the coal company secured permission from the city to do the work it agreed to be liable for all damages to persons and property during the time the drill holes were being bored. While this provision is not of itself controlling
 
 (Thomas v. Altoona & Logan V. E. R. Co.,
 
 191 Pa. 361, 366, 43 A. 215), yet it would form some ground for an inference that the coal company and those interested in the work appreciated the fact that there was imminent danger to abutting property by reason of the drilling operations.
 

 These facts disclose a situation quite different from the bare use by an independent contractor of .a high explosive. A situation was shown where the coal company undertook to have drilled a hole located within a few feet of plaintiffs’ property, which operation involved the firing of dynamite almost under plaintiffs’ property and within comparatively few feet of the surface. The charge was necessarily heavy enough to shatter boulders and such an explosion was bound to set up violent vibrations in the earth and the waves would in ¡the natural course of events reach plaintiffs’ property. The extent of the damage depended on many factors, some of which were in the control of the actor and some of which were not. Such an, act was just as much a breaking of plaintiffs’ close as any other direct trespass. In fact there was evidence on the part of the plaintiffs that not only was the plastering injured, but stones and dirt were thrown on plaintiffs’ property.
 

 Rafferty v. Davis,
 
 supra, cites with approval the statement in 11 R. C. L., p. 673, as follows: “The decided weight ,of authority supports the view that where one explodes blasts on his own land and thereby throws rocks, earth or debris on the premises of his neighbor,
 
 *318
 
 he commits a trespass and is answerable for the damage caused, irrespective of whether the blasting is negligently done.” In such a situation, the coal company can not hide behind its independent contractor. Where an act which causes injury to another is one which the contractor was employed to do and the injury results not from the manner of doing the work but from doing it at all, the employer is liable for the acts of his independent contractor:
 
 Foehr v. N. Y. Short Line R. R. Co.,
 
 40 Pa. Superior Ct. 7, 18; 65 L. R. A. 742, note. When the defendant coal company made a contract with the drilling company to drill a hole within eight feet of plaintiffs’ property, knowing that dynamite would be fired in the drilling operation, it was responsible for the consequences as it in effect provided for the doing of the work in the way it was done. The work to be done could not in the usual course of events be accomplished at the place designated without actionable injury to the property of third persons, and in such a case the employer of the contractor is liable.
 

 (2) The appellees next rely upon the principle of law as stated in Restatement, Torts §417, as follows: “One who employs an independent contractor to do work in a public place which (a) unless carefully done involves a risk of making the physical condition of the place dangerous for the use of members of the public, and (b) can only be lawfully done under a license given by a public authority, is subject to liability for bodily harm caused to members of the public by a negligent act or omission of the contractor which makes the physical condition of the place dangerous for their use.” Where the question is not an open one we are bound by the decisions of the Supreme Court and, as they do not support the rule stated, we cannot follow it. The principle involved has been discussed in Pennsylvania cases in a number of situations which involved excavations in public highways. In .the case of
 
 Smith v. Simmons,
 
 
 *319
 
 103 Pa. 32, a vote of council granted a property owner a license to dig a ditch and lay a pipe for a short distance along the public street in front of his house for the purpose of conveying water from a spring to his premises. The property owner contracted with one Florence to dig the ditch and lay the pipe. The property owner had nothing to do except to furnish the pipe and box and consequently could not interfere as to the manner in which the job was done. It was held that since Florence was an independent contractor, the property owner was not liable for injury done as the result of the negligence of the contractor as to the manner in which the ditch was protected. To the same effect are
 
 Allen v.
 
 Willard, 57 Pa. 374, and
 
 Wray v. Evans,
 
 80 Pa. 102.
 

 While these cases indicate quite definitely that the Supreme Court was not willing to follow the principle stated in §417, a modified form of that principle has been sustained which we would state as follows: When one employs an independent contractor to do work in a public place, which unless carefully done; involves a risk of making the physical condition of the place dangerous to the public and can only be lawfully done under a license given by a public authority, and such grant or license of privilege imposes an obligation on the part of the licensee as a consideration for the grant to do certain things for the protection of the public, the individual in receipt of the benefit cannot be relieved of liability assumed by committing the performance of these duties to another. In fact, in such cases liability cannot be avoided by showing that the injury resulted from the fault or negligence of the third person employed to perform these public duties.
 

 In
 
 Lancaster Ave. Imp. Co. v. Rhoads,
 
 116 Pa. 377, 9 A. 852, the improvement company was reducing the grade of its turnpike road and entrusted to others work in connection with the lowering of the grade. While
 
 *320
 
 the road was in use and as the result of the negligence of the independent contractor plaintiff was injured. The Supreme Court held that the improvement company could not hide behind its independent contractor as it had assumed when it ¡received its grant to maintain the road in a passable condition. This principle was recognized in the case of
 
 Chartiers Valley Gas Co. v. Waters,
 
 123 Pa. 220, 16 A. 423, but was! not applied because the statute there relied upon was held by the Supreme Court pot to have placed a responsibility on the gas company. The facts in the turnpike case and those in the present controversy are not the same but the principles are similar. Here the coal company had no right to go upon the public street and either drill holes or fire dynamite in connection with such drilling without the permission of the city. The city provided as an express condition of the grant that the coal company should be liable for all damages to persons and property “during the time said drill holes are being put down.” This was a condition which the city had a right to impose and which it was its duty to impose in view of the unusual and dangerous character of the work that was to be done and the probability of injury to abutting property owners or those using the streets, and one which cannot be avoided by entrusting the work to another.
 

 Thomas v. Altoona & Logan V. E. R. Co.,
 
 supra, cited by the appellant, is not to the contrary. In that case a contractor engaged by the railway company agreed to “indemnify and save harmless the defendant from payment of all sums of money by reason of! all or any such accidents, injuries, damages or hurt that may happen or occur upon or about said works” (p. 366). It will be noted that this was not a condition imposed by a public authority as the condition for an entering on such public property, but was a mere private agreement among the parties. Likewise the case of
 
 Erie v. Caulkins,
 
 85 Pa,
 
 *321
 
 247, is not applicable for there no liability was assumed to the public as a condition of the grant.
 

 Judgment affirmed.