Boliver *v.* Philadelphia, Appellant, et al.

Argued October 5, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES, and HIRT, JJ.

*James Francis Ryan,* with him *John J. K. Caskie,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*Joseph G. Feldman,* with him *David F. Maxwell,* for appellee.

OPINION BY STADTFELD, J., November 17, 1939:

This is an action in trespass against the City of Philadelphia, arising out of an accident which occurred on January 7, 1938, about 3:30 P. M.

The City of Philadelphia filed no affidavit of defense, but issued a Sci. Fa. naming the Philadelphia Rapid Transit Company as additional defendant.

On a clear, dry day, on the date above mentioned, plaintiff was driving a motorcycle in the middle of the car track southwardly on Fourth Street, between Arch and Market Streets, Philadelphia. Traffic was heavy and moving in front of him, behind him and to his left. On his right, standing parked along the curb, were automobiles and trucks. Plaintiff was driving eight or ten feet behind a truck and trailer, with tail-gate down, which was riding in the track. The operator of an automobile about ten feet behind plaintiff had been blowing his horn for plaintiff to get out of the way. Just before reaching 62 North Fourth Street, traffic immediately to plaintiff's left, or east, had cleared a bit, and receiving another signal from the operator of the car behind him, the plaintiff, in order to turn to the left or east, quickly glanced to his left rear, and seeing that he

had an opportunity to turn out of the track into the east cartway, began, at a speed of about 10 miles per hour, to cross over the east rail in a south by east direction. When in front of 62 North Fourth Street, plaintiff suddenly felt the front wheel of his motorcycle stick, and looking down, saw that the front wheel was stuck in a rut, defect or hole. Said defect was immediately adjacent to the east trolley rail, running parallel to it. Plaintiff attempted to get the wheel out of the defect, when suddenly the handlebars jerked out of his hands, causing him to lose control of his motorcycle. It then careened out of the defect and ran into an iron electric pole, situate on the east side of Fourth Street, about twenty-five feet away, rendering plaintiff unconscious. The defect was about six feet long on both sides of the track, the maximum depth being four and five-eighths inches; the depth varied in different spots.

Plaintiff had no knowledge of the condition of the street prior to the time of the accident.

The case was tried before FLOOD, J., and a jury, and a verdict rendered in favor of the plaintiff, against the City of Philadelphia, in the sum of $1,000, and in favor of the Philadelphia Rapid Transit Company. Defendant, City of Philadelphia, filed motions for a new trial and judgment non obstante veredicto, which were dismissed. Judgment was entered on the verdict. This appeal followed.

The only assignments of error are the refusal of binding instructions in favor of defendant and refusal to enter judgment non obstante veredicto.

On a motion for judgment n. o. v. the testimony should not only be read in the light most advantageous to the plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact, and inference of fact, pertaining to the issue involved which may reasonably be deduced from the evidence: *Galliano v. East Penn Electric Co.*, 303 Pa. 498, 154 A.

805; *Snyder et al. v. Penn-Liberty Refining Co.*, 302 Pa. 320, 153 A. 549; *Frank v. Reading Co.*, 297 Pa. 233, 146 A. 598.

The following are excerpts from the testimony of plaintiff: "Q. Now, what I want you to do is to go on and tell the court and jury in your own words exactly what happened as you were approaching and reached approximately 62 North 4th Street. A. Well, I was driving in between the two rails, directly behind this truck, and trailer ahead of me, I would say about 8 to 10 feet, and there was a car, an auto right behind me began to blow his horn for me to get out of the way, but I could not let him pass, because I could not get out of the way, and as the traffic cleared on my left, as I was approaching about or near 62 North 4th Street I started to cross the tracks, and ...... Q. Did you —when you started to cross this east rail, or the direction which you took, south by east, did you do it sharply or gradually? A. I had to do it gradually due to the fact that I was going too slow to gain, I mean to leave, that is, in order to keep the motorcycle under control I had to cut gradually across the tracks. Q. Well now, what, if anything, did you do before you started across in this diagonal direction? A. Well, before I started to cross I was driving, and I quick glanced back to see if I was clear to cross the tracks and get over to the left side of the street. Q. And was it clear? A. Yes, it was. And I was also mindful of the fact to keep my eyes ahead of me to the traffic, so I would not run into it ...... (Cross-Examination by Mr. Ryan): Q. Mr. Boliver, you were eight to ten feet behind this truck? A. Yes, sir. Q. And the truck was running in what part of the street? A. Was also, well, the wheels of the truck were, I would say, outside of the rails, but the truck was riding directly ahead of me in between the rails too; that is, the body of it, but with the tail-gate down; and I was following

directly behind it, so therefore it put the truck in the same position that I was in. Q. The truck was running in the trolley tracks? A. Yes, in the same line of the tracks. Q. Well, were the truck wheels in the trolley tracks? A. No, I wouldn't say that they were in them. It was a very large truck, and I didn't get a chance to see where its wheels were at. I had to keep my eyes ahead of me and on the traffic. Q. You kept your eyes ahead of you on the traffic? A. Yes. Q. That is, on the back of this truck that you were following. A. Yes, yes, watching more his tail-light than anything else; also the rest of the traffic. Q. Well, the rest of the traffic was passing to your left? A. Yes. Q. And you didn't look at that until you went to turn to the left, did you? A. I noticed that the cars were coming down on my left. The left side was moving faster than we were, and I would tell that there were no more cars passing down before I started crossing the street, as I quickly glanced back before I crossed the street. Also I kept my eyes ahead of me, where I was going. Q. And did you look ahead of you where you were going? A. Yes, I did. I didn't want to run— Q. And in the space between the 10 feet between you and the truck did you see this rut at the car track? A. No, I didn't see the rut because I had to keep my eyes on the traffic rather than the roadway."

It is not contended that plaintiff had knowledge of the defect into which he rode. The fact that he had knowledge of "bumps" on the street surface does not convict him of contributory negligence as a matter of law. It is only when the danger is so apparent that an ordinary prudent person would regard it as dangerous, and therefore avoid it, that a trial court can say, as a matter of law, that a person using the same is guilty of contributory negligence: *McManamon v. Hanover Twp.*, 232 Pa. 439, 81 A. 440. Appellant contends that if plaintiff had looked he could have seen the defect.

Appellant, however, fails to take into consideration the fact that it was plaintiff's duty to regard the traffic around him as well as the roadway ahead of him. As plaintiff said, "and I was also mindful of the fact to keep my eyes ahead of me to the traffic so I would not run into it."

As stated in *Graham v. Philadelphia,* 19 Pa. Superior Ct. 292, 296, plaintiff " . . . . . . must, however, keep his eyes open and his wits about him and must look where he is driving. The omission of this plain duty is negligence and bars recovery for the injury to which it contributed. But there must be no doubt or uncertainty about the facts attending the accident in order to justify the courts in treating the question of contributory negligence as one of law. Whenever there is a conflict of testimony or for any cause, there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, negligence is always a question for the jury."

In the case of *Culver et al. v. Lehigh Valley Transit Co. et al.,* 322 Pa. 503, 186 A. 70, plaintiff, while driving his car, desired to pass the car ahead of him, and for that purpose turned left and straddled the rail of the trolley track of defendant. Plaintiff was driving at a rate of about 18 or 20 miles per hour and the street was dry. After passing the car in front of him, plaintiff turned diagonally right in order to come again to the right side of the road; his left front wheel passed over the trolley rail but his left rear wheel caught in it; the car slid for a distance of from five or ten feet before the wheel freed itself, and as it did so the car pitched to the side of the street into a telegraph pole. Plaintiff and his passengers were seriously injured. There was testimony to the effect that the accident was due to the fact that, at the point where the left rear wheel came in contact with the rail, the latter protruded from one and a half to three and a half inches above the

level of the street on the inside of the track. This situation resulted from a depression in the brick paving immediately inside the rail for a distance of several feet. Witnesses stated that the condition had existed for a period of at least six months prior to the accident. The court stated, on pp. 509, 510: "Defendant urges that plaintiffs were guilty of contributory negligence as a matter of law. In our opinion, however, this question was for the jury. It cannot be said that in attempting to bring his car out of the track space Culver, had he looked, must have seen the depression in the bricks immediately adjacent to the rail. The right wheels had never been within the track, and the passage of the left wheels across the rail had to be at an oblique angle. Considering that the turn to the right in front of the Ford car necessarily absorbed his attention, it cannot be asserted with finality that he was careless in not observing the defect or, observing it, in not realizing the inability of the wheel to clear it with safety."

In the case of *Yocum v. Reading City,* 235 Pa. 552, 84 A. 510, which is, in many respects, similar to the instant case, the plaintiff was driving his motorcycle slowly down one of the main thoroughfares of the city. The asphalt pavement was broken up with numerous holes. The lower court, in an opinion approved by the Supreme Court, said, on pp. 553, 554: "Looking ahead of him he observed between the curb and the street railway track several teams, some moving and one standing at the curb. With his attention directed partly to the street bed and partly to the teams, he ran into another hole which he did not see. His machine broke and he, in falling, was very severely and permanently injured. His own testimony in chief and on cross-examination as to what he was doing and how he was proceeding cannot be declared as a matter of law to convict him of any omission of duty."

And further, on p. 555, the lower court said: "If in

all this there are any inconsistencies, it was of course for the jury to deal with them and to ascertain the effect of the testimony as a whole: *Kohler v. R. R. Co.,* 135 Pa. 346; *Danko v. Rys. Co.,* 230 Pa. 295. It certainly does not exclude, as unreasonable and capricious, an interpretation whereby his conduct would appear to have been unobjectionable, judged by the rules laid down in such cases as *Evans v. Philadelphia,* 205 Pa. 193; *Quinlan v. Philadelphia,* 205 Pa. 309; *McClay v. Philadelphia,* 224 Pa. 174. Under the charge, which is not impugned, the jury must be understood as having put that interpretation upon it, and that settles his right to recover."

Appellant cites, inter alia, the case of *Shepherd v. City of Philadelphia,* 279 Pa. 333, 123 A. 790. With reference to this case, the trial court in the instant case said, in the opinion filed: "The decision in *Shepherd v. City of Philadelphia,* 279 Pa. 333 (1924), cited by the defendant, City of Philadelphia, is not apposite. The hole there was a large one; the street was clear, and there was no other traffic on it at the time of the accident. Further, plaintiff had traveled over the street daily for a period of several months and was entirely familiar with it. There was no such evidence before us here."

It would have been error for the trial judge to have held the plaintiff guilty of contributory negligence as a matter of law. That was clearly, under the evidence, a question for the jury to which it was submitted in a charge concerning which no complaint is made.

The assignments of error are overruled and judgment affirmed.