**DOWNEY v. UNION PAVING CO.**

No. 9744.

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1949.

Decided March 11, 1949.

482

Raymond A. White, Jr., Philadelphia, Pa., for appellant.

John W. Bohlen, Philadelphia, Pa. (Thomas D. McBride, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Defendant seeks reversal of a judgment, obtained against it, on two grounds (1) that plaintiff was guilty of contributory negligence as a matter of law in that he did not have his car under such control that he could stop it within the range of his headlights;[1] and (2) that the road excavation into which the plaintiff's automobile was driven was at that time under the control of an independent contractor and not the defendant, the primary contractor.

Viewed in favor of the plaintiff, as it must be, the evidence concerning the accident is as follows:

About 20 minutes after midnight on the morning of December 13, 1946, plaintiff while operating his automobile at a speed of 30 miles an hour west upon the northernmost of the four traffic lanes of Lancaster Avenue at Strafford, Pennsylvania, drove into an excavation which stretched 20 feet across the two westbound lanes on the north side of the road. The excavation was 6 feet wide and about 5 feet deep. It was at a low point in the road approximately 150 feet west of the "Old Covered Wagon Inn". To the right of the road, on a fence west of the Inn and just east of the excavation, was a sign, 3 feet by 4 feet, which read "Keep to the Right". The sign was illuminated by a pot flare or torch.

1. The Pennsylvania rule establishes the duty of the operator of a motor vehicle to maintain such control over it as to enable him to bring it to a stop within the range of his headlights. Hutchinson v. Follmer Trucking Co., 1939, 333 Pa. 424, 5 A.2d 182.

There were no lights or pot flares burning nor were there any barricades in place on the lane in which the plaintiff was driving *east* of the excavation.[2] About 50 to 75 feet *west* of the excavation there were some pot flares burning in that lane. No overhead street lamps lighted the scene of the accident and no watchman was present. Sheppard, the defendant's assistant superintendent, who had, among others, been assigned to the job of seeing to it "that the safety of the public would be protected" by checking on warning lights, etc., had left the scene at 5 P. M. The weather was a little foggy at the site of the excavation and it had been raining shortly before the accident.

After passing the Inn and while nearing the excavation plaintiff saw an automobile on the outside eastbound lane approaching from the opposite direction "blinking" its headlights. The "blinking" was intended to warn the plaintiff of the presence of the excavation. The plaintiff's own headlights were on at the time and illuminated the road for a distance from 100 to 200 feet ahead. Plaintiff could have brought his car to a stop within 15 feet.

At the time of the occurrence Lancaster Avenue was being reconstructed by the Commonwealth of Pennsylvania Highway Department ("Department") which had let a portion of the reconstruction contract to the defendant. The latter in turn, with the permission of Department, had sublet the work to the C. & T. Construction Company. Department's consent was given "with the condition that you (defendant) maintain on the work at all times a competent superintendent in the direct employ of your company, through whom representatives of this Department may deal".

The contract between Department and the defendant required that two lanes of traffic (one in each direction) should at all times be kept open for the use of the traveling public. It specifically provided that suitable and sufficient barricades, warning signs, torches and/or approved reflectors be placed and maintained to protect adequately the work under construction and the traveling public. Barricades, danger and warning signs, and the traffic lanes were required to be illuminated at night in such manner as to be plainly visible and all lights were to be kept burning from sunset until sunrise. A sufficient number of watchmen was to be provided for the protection of the public and the work.

Certain well-established Pennsylvania legal principles are applicable in the determination of the issue as to whether plaintiff was guilty of contributory negligence as a matter of law. They are:

"For a court to be justified in declaring a person contributorily negligent as a matter of law, evidence of such negligence must be so clear and unmistakable that no reasonable basis remains for an inference to the contrary. * * *" Mogren v. Gadonas, 1948, 358 Pa. 507, 510, 58 A.2d 150, 151. The Pennsylvania rule that the operator of an automobile must have such control of it so as to be able to stop it within the range of his headlights, or the assured clear distance ahead, is not an inflexible mandate under the decisions of the State's appellate courts. It is not applied when there is evidence from which the jury may find extraordinary or disconcerting circumstances affecting the driver's judgment and actions at the time of the accident. Yocum v. Reading City, 1912, 235 Pa. 552, 84 A. 510; Farley v. Ventresco, 1932, 307 Pa. 441, 161 A. 534; Kazan v. Wilkes-Barre Railway Corporation, 1942, 151 Pa.Super. 38, 29 A.2d 221, affirmed per curiam by the Pennsylvania Supreme Court, 1943; 347 Pa. 232, 32 A.2d 32; Boor v. Schreiber, 1943, 152 Pa.Super. 458, 33 A.2d 648. It is the duty of the operator of a motor vehicle "* * * to regard the traffic around him as well as the roadway ahead of him. * * *" Boliver v. Philadelphia, 1939, 137 Pa.Super. 437, 442, 9 A.2d 193, 195. One, "* * * should not be held negligent in doing an act which he believed was proper and that he had been

2. Several unlighted pot flares were found east of the excavation immediately after the accident; they were either defective or improperly maintained and would not stay lighted for more than a few minutes when tested.

484

encouraged to believe proper by the one who injured him." Klingensmith v. West Penn Railways Co., 1931, 303 Pa. 487, 491, 154 A. 811, 812; nor is there a duty to anticipate defendant's negligence. Dickun v. Pittsburgh Railways Co., 1932, 308 Pa. 20, 161 A. 739. "On a motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence." Galliano v. East Penn Electric Co., 1931, 303 Pa. 498, 508, 154 A. 805, 809.

■ Applying the principles stated to the instant case, we are of the opinion that the question of contributory negligence was clearly one for the exercise of reasonable judgment by the trial court and jury and we cannot say as a matter of law that they erred in the conclusion which they reached. Farley v. Ventresco, supra.

The presence of the "Keep to the Right" sign just east of the excavation on which the plaintiff said he relied was alone sufficient to make the question of contributory negligence one for the jury. Additionally, there were the factors of the burning pot flares in the lane *west* of the excavation and the temporary distraction of the plaintiff from the roadway immediately ahead of him by reason of the blinking lights of the approaching automobile.

In Havens v. Strayer, 1937, 326 Pa. 563, 193 A. 13, 16, the defendant, a contractor, was replacing a bridge. The center of the bridge was found to have moved 30 inches. The defendant nevertheless wished to keep the bridge open to traffic, pursuant to his contract obligation. Defendant's watchman at one end of the bridge was instructed to tell motorists that the bridge was safe for the use of one car at a time and to inform them that the bridge "had moved at the center pier, and that they were traveling at their own risk if they crossed the bridge." The Pennsylvania Supreme Court held that plaintiff's decedent was not guilty of contributory negligence as a matter of law. Said the

Court 326 Pa. at page 570, 193 A. at page 16:

"It cannot be said as a matter of law that a man is negligent who starts to cross a bridge after being told *in effect* by the watchman stationed there that 'one car at a time can go over.'" (Emphasis in text.)

In Clamper v. Philadelphia, 1924, 279 Pa. 385, 124 A. 132, a red light to the side of a street marked a hole. Twenty-five feet ahead of the light, the City had stretched an unmarked rope completely across the street, which plaintiff hit. Holding that the plaintiff was not guilty of contributory negligence as a matter of law, the Court said, 279 Pa. at page 387, 124 A. at page 133:

"One driving along the street in question would be *justified* in concluding the danger point was confined to the immediate location of the red light near the curb and that the remainder of the street was passable." (Emphasis supplied.)

In Mumbower v. Weaver, 1925, 282 Pa. 605, 128 A. 535, 536, the defendant contractor repairing a street put up "some red lights * * * a red flag, and signs warning that the street was under repair and closed." However, the road was not entirely blocked off, one side was open for travel and "the warnings so indicated". Farther along the road an unmarked rope stretched across the entire street and plaintiff drove his car into this rope. In affirming judgment for the plaintiff the Court said, 282 Pa. at page 608, 128 A. at page 536:

"Under this state of facts, we cannot say plaintiff's decedent was guilty of contributory negligence as a matter of law in proceeding along that part of the highway which was *apparently* open to public travel." (Emphasis supplied.)

In the case *sub judice*, "The evidence, permissible for the court's consideration in connection with the defendant's motion for judgment n. o. v., fails to show negligence on the part of the plaintiff so clearly that no other inference can properly be drawn from it" and under such circumstances the case was for the jury, as we held in Cranston v. Baltimore & O. R. Co., 3 Cir., 1940, 109 F.2d 630, 634.

Finally, as to defendant's contention that it is insulated from liability on the ground that the admitted negligence[3] was that of the independent contractor:

In support of that contention defendant urges that it had the consent of the Department to sublet to the C. & T. Construction Company, an experienced and competent subcontractor; that the latter was charged with the duty to barricade properly the excavation and place warning lights and signals; that the method of doing the work was entirely under the control and management of the subcontractor; that the defendant had no control of the subcontractor and nothing to do with the work except to see that the result required in the contract was obtained; that it maintained a superintendent on the job through whom the representatives of the Department could deal.

Extended discussion of the defendant's contention is unnecessary because the testimony disclosed that it in fact, through Sheppard, its assistant superintendent, exercised at least a supervisory control over the guarding of the excavation. Sheppard testified:

"I was there primarily, Your Honor, to see that the excavation actually had been barricaded and lit by the subcontractor. I was merely checking on him as well as on the condition itself."[4]

Again, in response to the question "were you there at the instance of Union Paving Company for the purpose of seeing to it that the safety of the public would be protected", Sheppard answered:

"Yes, to a great extent, I was one of several people that were there, but that was part of my duty."[5]

This exercise of supervisory control by the defendant makes unavailable to it the "independent contractor" defense. As was stated in Silveus v. Grossman, 1932, 307 Pa. 272, 278, 161 A. 362, 364:

"Nor does the principle (of independent contractor) extend to cases where the employer of the contractor has not relinquished his control over the work to be done, and still continues liable for his duty to others in respect to it. * * * The very phrase 'independent contractor' implies that the contractor is independent in the manner of doing the work contracted for. * * *"

Finally, independent of the fact of retention of supervisory control by the defendant over the subcontractor's lighting and barricading of the work, the defendant is liable under the Pennsylvania decisions for the subcontractor's admitted negligence. The Pennsylvania rule was stated as follows in Baier v. Glen Alden Coal Co., 1938, 131 Pa.Super. 309,[6] at page 319, 200 A. 190, at page 195:

"When one employs an independent contractor to do work in a public place, which unless carefully done involves a risk of making the physical condition of the place dangerous to the public and can only be lawfully done under a license given by a public authority, and such grant or license of privilege imposes an obligation on the part of the licensee as a consideration for the grant to do certain things for the protection of the public, the individual in receipt of the benefit cannot be relieved of liability assumed by committing the performance of these duties to another. *In fact, in such cases liability cannot be avoided by showing that the injury resulted from the fault or negligence of the third person employed to perform these public duties.*

"In Lancaster Ave. Imp. Co. v. Rhoads, 116 Pa. 377, 9 A. 852, 2 Am.St.Rep. 608, the improvement company was reducing the grade of its turnpike road and entrust-

---

3. The brief for the appellant states at page 17:
   "The jury found that the barricades and lights had not been properly put out. This was a negligent act of Clements (subcontractor's foreman), but it was a duty that was understood and contracted for between the Union Paving Company and C. & T. Construction Company."

4. Notes of Testimony, page 142.

5. Notes of Testimony, page 146.

6. Affirmed on other grounds, 1939, 332 Pa. 561, 3 A.2d 349.

ed to others work in connection with the lowering of the grade. While the road was in use and as the result of the negligence of the independent contractor plaintiff was injured. *The Supreme Court held that the improvement company could not hide behind its independent contractor as it had assumed when it received its grant to maintain the road in a passable condition.*" (Emphasis supplied.)

Here, as was noted at the outset of this opinion, the contract between the Department and the defendant required that two lanes of traffic should at all times be kept open for the public use and specifically provided for the maintenance of adequate barricades, warning signals, torches, etc., as well as watchmen "for the protection of the public."

For the reasons stated the judgment in the District Court will be affirmed.